VAN DUSEN AIRCRAFT SUPPLIES OF NEW ENGLAND, INC. *vs.* MASSACHUSETTS PORT AUTHORITY.

Suffolk. November 5, 1971. — February 10, 1972.

Present: TAURO, C. J., CUTTER, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Landlord and Tenant,* Lease for airport "fixed based operation," Impossibility of performance, Divisible provisions of lease, "First refusal," Tenancy at sufferance. *Logan International Airport.*

A lease of several areas in Logan International Airport containing separate words of demise and separate statements of terms relating to each of the areas was divisible and impossibility of performance of the lease with respect to one of the areas did not excuse performance of the remainder of the lease, although the terms of the lease required the lessee "to conduct a complete fixed base operation" and as a result of such impossibility the lessee would be left without a hangar facility which was necessary for a complete fixed base operation, but which was only a small part of the services for general aviation provided by the lessee. [137–139]

Where the terms of a lease of several areas in Logan International Airport provided that the lessee might occupy a hangar area until a hangar and taxiway were constructed in and to a second area, or until a later date in the event that the lessor should change its master plan and decide to continue use of the first area as a site for a fixed base operation, and where subsequent legislation made use of the second area for a hangar facility impossible and the lessor did not change its master plan, the lessee occupied the first area as a tenant at sufferance rather than as a tenant at will after the enactment of such legislation. [140]

A provision in a lease of certain areas at the Logan International Airport, stating that the lease would be subordinate to the provisions of any agreement between the lessor and the United States the ex-

ecution of which was required as a condition precedent to the expenditure of Federal funds for the development of the airport, was inserted for the benefit of the lessor and did not give the lessee, who was not a party to any such agreement, a right to enforce or compel any benefit from it. [141]

In a lease of space in an airport, a provision that the lessor would make available to the lessee at a specified price such additional area as in the judgment of the lessor should become available for the lessee's fixed base operation did not give the lessee first refusal of any future fixed base operation proposed by the lessor at the airport. [142–143]

BILL IN EQUITY filed in the Superior Court on June 14, 1968.

The suit was heard by *Brogna, J.*

*Edward O. Proctor* (*Alan L. Lefkowitz* with him) for the plaintiff.

*Donald R. Grant* for the defendant.

HENNESSEY, J.   This is a bill for declaratory relief under G. L. c. 231A, in which the parties seek a declaration of their legal relations arising out of a certain lease. The evidence is reported and the judge made extensive voluntary findings of fact.   Both parties have appealed from the final decree as entered by a Superior Court judge.

We summarize the facts.   Van Dusen Aircraft Supplies of New England, Inc. (Van Dusen) is a Massachusetts corporation which is the lessee under a lease of certain portions of Logan International Airport (Logan) in East Boston.   The lessor under the lease is the Massachusetts Port Authority (Authority) which since 1959 has had title to and control of most of the area of Logan. Since 1951, Van Dusen has conducted a fixed base operation at Logan.   A fixed base operation renders various services to that segment of aviation known as "general aviation," which term is usually understood to include private and executive aircraft (and their owners) but not such scheduled commercial air carriers (or their aircraft) as maintain fueling and servicing facilities of their own at the airport.

The services supplied by a fixed base operation are generally understood to include the sale of aviation fuel and lubricants; the sale of new and replacement parts and equipment for aircraft; the sale of miscellaneous airmen's supplies; the service, maintenance and repair of aircraft; the parking and storing of aircraft and "lead in and lead out" guidance service for general aviation users; collection of fees for use of the airports; sale and delivery of fuel and lubricants for motor vehicles and ground handling equipment servicing aircraft; operation of motor vehicles to transport personnel serviced or employed by the fixed base operator; and sale or lease of aircraft and the performance of related services of value to general aviation. Fixed base operations can be conducted only at an airport in areas having access to runways and taxiways.

Van Dusen has, since 1951, conducted a fixed base operation from the hangar which it presently occupies in an area known as Area No. 5, which is located immediately easterly of the so called General Aviation Administration Building. During at least part of that period of years, Van Dusen was one of two companies engaged in fixed base operations at Logan. In July, 1960, when Van Dusen was operating under the terms of a written lease which was to expire on December 31, 1961, the Authority commenced negotiations with several companies, including Van Dusen, for the purpose of selecting a single fixed base operator to provide all such service to general aviation at Logan. On February 10, 1961, the Authority informed Van Dusen that Butler Aviation (Butler) had been selected as exclusive fixed base operator at Logan. On July 1, 1961, a twenty year lease was signed with Butler as lessee. As a result of hearings before the Federal Aviation Agency, in which Van Dusen successfully contended that the exclusive privileges extended to Butler were in violation of certain aspects of applicable Federal law, the Authority renegotiated its lease with Butler, and on July 1, 1962, executed a new lease with Van Dusen. Butler, under its renegotiated

lease, has continued to conduct a fixed base operation. The new lease with Van Dusen gave rise to the legal issues which are the subject matter of the litigation now before us.  Notice of this lease was recorded in the registry of deeds of Suffolk County on or about July 25, 1962, and this notice stated the term of the lease as "twenty-one (21) years commencing July 1, 1962, and ending June 30, 1983."

Article I of the lease provides that "the term . . . shall be for a period of twenty-one (21) years, beginning July 1, 1962, and ending June 30, 1983, unless sooner terminated as provided for in this lease."   There was a provision for an additional ten years at the option of Van Dusen.

Article II of the lease refers to five specific areas of Logan demised to Van Dusen as follows: Area No. 5 (Hangar A and surrounding area) ; Area No. 1; space in Pier B; space in the General Aviation Administration Building; and the fuel storage area.

Area No. 5, in accordance with the terms of the lease, was to be occupied by Van Dusen (i) through June 30, 1963, or (ii) through the last day of the month when both the South Taxiway Extension to be constructed by the lessor and the hangar to be constructed on Area No. 1 by the lessee shall be completed, whichever would turn out to be the later date, subject however to paragraph 1 (d) and 1 (e) of art. VI which provided that "(d) prior to July 1, 1963, Lessor shall undertake and complete construction of (1) the extension of the South Taxiway; (2) the necessary road for ingress and egress to and from the new hangar to be constructed by Lessee on Area No. 1, and (3) a chain link fence to protect Area No. 1," and "(e) Lessor and Lessee hereby acknowledge that this Lease has been written and executed in accordance with the master plan of Lessor for the development of the general aviation area at the Airport, as shown on Exhibit A attached hereto.   While it is understood that pursuant to said plan Lessor plans to raze Hangar A immediately upon termination of Lessee's tenancy thereon, as pro-

vided in paragraph 1 of Article II, in the event that Lessor should change said master plan prior to July 1, 1967, and elect to continue Area No. 5 as a fixed base facility, Lessor hereby agrees to continue Lessee's occupancy of said Area No. 5 until July 1, 1967; Lessor further proposes to make available to Lessee at six cents (6¢) per square foot such additional area as in the reasonable judgment of Lessor becomes available for Lessee's fixed base operation."

The lease thus provided that Van Dusen was to vacate Area No. 5, where it had the use of a hangar and surrounding area, and was to occupy Area No. 1, located to the northwest of Area No. 5, and there Van Dusen would build its new hangar and have the use of a larger surrounding area than was available in Area No. 5. Area No. 1 was to be the only hangar facility available for Van Dusen's use. A hangar is necessary for the complete service required of a fixed base operation for general aviation.

As of January 31, 1963, Van Dusen and Shell Oil Company entered into a sublease of the fuel storage area described in the lease. This sublease was approved in writing by the Authority.

By St. 1963, c. 410, which was approved on May 16, 1963, it became illegal to construct an aircraft hangar or to operate aircraft in Area No. 1. Statute 1963, c. 410, was repealed by St. 1964, c. 383, § 1, but its provisions were reënacted in substantially the same form by St. 1964, c. 383, § 2. As a consequence of these statutes, it has become impossible to conduct a fixed base operation in Area No. 1.

Van Dusen, at the time of the trial of this case, was occupying Area No. 5, the fuel storage area and the space in the General Aviation Administration Building. Only ten per cent of Van Dusen's gross income from its Logan operations has been derived from activities related to its use of the hangar in Area No. 5. At no time since July 1, 1962, has the Authority made available to Van Dusen any additional area for its fixed base operation. In June

of 1968, approximately fifteen acres of previously unavailable land became available to the Authority at Logan. The Authority leased the entire fifteen acres to Eastern Airlines, which has never used the entire area, and has made some portions of the area available to subtenants. On May 28, 1968, the Authority informed Van Dusen by letter of its intention to solicit proposals from interested companies, except Butler, for the future conduct of fixed base operations at Logan in Area No. 5 and other suitable locations at Logan. The Authority also stated in the letter that in its opinion the lease of July 1, 1962, no longer afforded Van Dusen any right to continue to occupy the several parts of Logan now occupied by it. The letter also notified Van Dusen to quit and vacate all of the premises at Logan by June 30, 1968. At least one other available portion of Logan is appropriate for relocation of the Van Dusen hangar.

The final decree entered by the judge provided that "[t]he occupancy of Area No. 5 by Van Dusen since June 30, 1967, is under a tenancy at will; [that] [t]he provisions of the lease pertaining to Area No. 1 and the rental payments therefor are unenforceable by reason of impossibility of performance through the fault of neither party; . . . that in the event the Authority seeks, prior to June 30, 1983, to enter into a lease or other arrangement with any other party . . . (in addition to Butler) to operate a fixed base operation for general aviation at Logan which will include a hangar and/or open storage area, the Authority shall first offer such facilities to Van Dusen upon similar terms and conditions, so that Van Dusen may have a right of first refusal; . . . [and that] [t]he provisions of the lease pertaining to space in Pier B, space in the administration building, and space in the fuel storage area, and the rental and other provisions and restrictions in the lease pertaining . . . [to those areas] are possible of performance and may be enforced separately at the option of Van Dusen by signifying its intention so to do in writing to the Authority within 30 days from the entry of the final decree."

The parties agree with that portion of the final decree which declares that the lease is impossible to perform in so far as it pertains to Area No. 1, and that neither party was at fault concerning that impossibility. The Authority appeals from the portions of the decree which in substance provide that (1) the lease is divisible and that Van Dusen has the privilege of asserting rights in the remaining specified areas, and (2) Van Dusen shall have a first refusal of any future fixed base operation at Logan to be proposed by the Authority. The Authority also argues that the judge was in error in certain rulings on evidence. Van Dusen appeals from the provision that its present occupancy of Area No. 5 is as a tenant at will only and from the court's failure to rule that in case the Authority in the future has additional space for the erection of a hangar and for open storage, it must be offered to Van Dusen at six cents a square foot.

1. We conclude that the judge was correct in his holding that the provisions of the lease pertaining to space in Pier B, space in the administration building, and space in the fuel storage area are possible of performance and may be enforced separately. Where the conditions that rendered performance impossible are not of such extent as to amount to a substantial abrogation of the entire contract, they excuse performance only to the extent to which performance is impossible and may not excuse the remaining part of the contract, unless the circumstances are such that performance would be unjust to the promisor. Williston, Contracts (2d ed.) § 1956. Restatement: Contracts, §§ 463, 464. A taking by eminent domain of a portion of leased premises does not terminate a lease unless there is an eviction. *A. W. Banister Co.* v. *P. J. W. Moodie Lumber Corp.* 286 Mass. 424, 426. *W. M. McDonald Co. Inc.* v. *Hawkins,* 287 Mass. 71, 74–75. *Newman* v. *Commonwealth,* 336 Mass. 444, 446, and cases cited. The same rule is established in the case of a contract to convey land when part is taken by eminent domain. *Gillis* v. *Bonelli-Adams Co.* 284 Mass. 176, 179–180. A similar result is reached

where action by a governmental agency prevents the full use of the leased premises for the purposes for which they were intended. *Gaston* v. *Gordon,* 208 Mass. 265, 269. *Imbeschied* v. *Lerner,* 241 Mass. 199, 201. *Essex-Lincoln Garage, Inc.* v. *Boston,* 342 Mass. 719, 721–722.

The instrument here, which contains the provisions of an operating agreement as well as a lease of certain areas of real property, is so structured and worded as to make it practical to regard it as divisible. There is no such inextricable relationship among the various phases of the fixed base operation, or among the several parcels of real estate, as to preclude the result that we have reached. Enforcing the provisions of the lease, except in so far as they pertain to Area No. 1, will not in our view work an injustice upon the Authority.

Each of the several areas of leased land is separately considered in the wording and structure of the lease. The space in Pier B, space in the administration building, and space in the fuel storage area are each the subject of distinct and separate words of demise. As to each area the prefatory language is "lessor hereby leases" unconditionally and without reference to the also separately stated provisions concerning Area No. 5 and Area No. 1. Similarly, the "Rental and Other Payments" for each area are separately and unconditionally stated, with no discernible relationship or connection among the various monetary amounts set for the several separate areas. The term of the lease is incorporated by reference into each of the separate paragraphs of the lease which describe the leased areas.

No injustice or disadvantage to the Authority, sufficient to excuse performance of the entire lease, is shown. The Authority argues that the requirement that Van Dusen shall "conduct a complete fixed base operation," read together with the several provisions that recognize the obligations to serve the public interest, renders the entire bargain incapable of execution. It is undisputed that a complete fixed base operation

361 Mass. 131                                                    139

Van Dusen Aircraft Supplies of N. E. *v.* Massachusetts Port Authy.

involves in one of its aspects the maintenance of airplanes and, for that reason, cannot be provided without an adequate hangar and maintenance area similar to that planned for Area No. 1. Since, as will appear below, Van Dusen presently occupies the hangar in Area No. 5 only at sufferance of the Authority, it follows that the unavailability of Area No. 1 will leave Van Dusen with no right to a hangar facility and consequently no adequate capacity to perform airplane maintenance. Nevertheless, the evidence discloses that Van Dusen derived $370,000 in gross revenue from its activities at Logan in the year 1969, and only about ten per cent of this amount was from services related to the hangar of Area No. 5. Thus, Van Dusen has provided substantial services for general aviation including the furnishing of airplane parts and fuel, exclusive of its hangar activities. It can continue to perform such services for the benefit of both parties, as well as general aviation, even though it cannot provide a complete fixed base operation when and if it is required to vacate Area No. 5.

Although Van Dusen cannot provide all of the fixed base services that the parties had contemplated, our reading of the language of the entire lease does not bring us to the conclusion, as urged by the Authority, that Van Dusen should be now precluded from affording that substantial number of services that it can provide for general aviation at Logan. If the Authority and Van Dusen are unable to reach a new agreement for a suitable area of land in substitution of Area No. 1, we observe that the Authority can as it has in the past contract with another fixed base operator, or more than one, to provide hangar-related services to general aviation.

We need not consider whether the judge, having ruled correctly that the remainder of the lease was enforceable, was also correct in ruling that the agreement was enforceable at the election of Van Dusen (see *Kares* v. *Covell*, 180 Mass. 206, 208, and *Gillis* v. *Bonelli-Adams*

*Co.* 284 Mass. 176, 179) since Van Dusen asserted in a writing, addressed to the Authority after the entry of the final decree, that it was enforcing the remainder of the lease.

2. The final decree was in error in declaring that Van Dusen presently occupies Area No. 5 (its present hangar area) as a tenant at will. We conclude that Van Dusen occupies that area as a tenant at sufferance. Paragraph 1 of art. II of the lease provides that Van Dusen shall occupy Area No. 5 through June 30, 1963, or until the date when the hangar in Area No. 1 is completed and a taxiway is constructed to that area, whichever is the later date. There is further provision (art. VI, 1 [e]), that Van Dusen would be permitted to occupy Area No. 5 until July 1, 1967, in the event that the Authority should change its master plan before that date and decide to continue the use of Area No. 5 as a site for a fixed base operation. In the same paragraph is a statement of the intention of the Authority, as of the time of the execution of the lease, to raze the hangar in Area No. 5 as soon as the hangar in Area No. 1 became available to Van Dusen.

Clearly, the decision as to whether Van Dusen should be permitted to continue operations in Area No. 5 rested solely with the Authority, as soon as it became evident that Area No. 1 was not to be available by reason of the legislative prohibition contained in St. 1963, c. 410. Since that time, we conclude, Van Dusen has been occupying Area No. 5 only at the tolerance of the Authority, since the Authority did not at any time change its master plan for the development of general aviation or elect to continue Area No. 5 as a fixed base facility.

Van Dusen's argument that it has the right, by reason of the construction and wording of the entire lease, to remain in Area No. 5 for the entire period of the lease because the substitute for Area No. 5 is no longer available is not tenable. For one thing, in urging its premise that no part of the complete fixed base operation shall be prevented by reason of the impossibility of performance

361 Mass. 131                                    141

Van Dusen Aircraft Supplies of N. E. *v.* Massachusetts Port Authy.

concerning Area No. 1, it argues inconsistently with its earlier contention that the remaining areas covered by the lease shall be treated separately from Area No. 1.

Van Dusen also argues incorrectly that it acquired the right to remain in Area No. 5 for the full term of the lease by reason of certain correspondence and negotiations between the Authority and the Federal Aviation Agency (FAA). There was certain evidence which Van Dusen now asserts is proof that these negotiations resulted in a grant agreement to provide substantial Federal funds to the Authority for use at Logan in reliance upon representations by the Authority that it would continue to make Area No. 5 or an equivalent area available to Van Dusen. There is also a provision in the lease that it "shall be subordinate to the provisions of any existing or future agreement between Lessor and the United States relative to the operation or maintenance of the Airport, the execution of which has been or may be required as a condition precedent to the expenditure of Federal funds for the development of the Airport."

Even if we assume that Van Dusen is correct in its assertion that the Authority made written representations to the FAA that Van Dusen would be allowed to remain in Area No. 5 or an equivalent area, those representations avail Van Dusen nothing. The language of the lease which refers to agreements between the Authority and the United States was for the benefit of the Authority, not Van Dusen. *Ehrlich* v. *Johnson Serv. Co.* 272 Mass. 385, 390. Clearly, its purpose was to enable the Authority unilaterally to effect whatever amendments to the agreement might be required by FAA as conditions for the obtaining of Federal funds. See *Manufacturers' Fin. Co.* v. *Rockwell,* 278 Mass. 502, 505–506; *Trustees of Tufts College* v. *Volpe Constr. Co. Inc.* 358 Mass. 331, 339. Van Dusen was not a party to any agreement between the Authority and FAA and could not enforce or compel any benefit from it. *Mellen* v. *Whipple,* 1 Gray, 317. *United Elec. Light Co.* v. *Deliso Constr. Co. Inc.* 315 Mass. 313, 315, 322. *Gustafson* v. *Doyle,* 329 Mass.

473, 476. Also, Van Dusen cannot compel enforcement by judicial proceedings because the exclusive method for enforcing the agreement, if it was an agreement, is the withholding of Federal funds, a matter with which this court is not concerned.

3. The final decree was in error in the provision that Van Dusen shall have first refusal of any future fixed base operation at Logan to be proposed by the Authority during the term of the lease. Van Dusen, in its argument on this issue, principally relies upon the language of art. VI, 1 (e), which provides that "Lessor further proposes to make available to Lessee at six cents (6¢) per square foot such additional area as in the reasonable judgment of Lessor becomes available for Lessee's fixed base operation." However, when it is read in context, this language is clearly applicable only under certain conditions. These conditions were never met, since at no time prior to July 1, 1967, did the Authority ever change the 1962 master plan; there has been no election by the Authority to continue Area No. 5 as a fixed base facility; there has been no agreement to continue Van Dusen's occupancy of Area No. 5 until July 1, 1967; and there has been no exercise of judgment by the Authority in Van Dusen's favor with respect to any land which may have been available. The "additional area" was not a reference to Area No. 5. The reference to "additional area" cannot fairly be read to imply that another location would be substituted if Area No. 5 became unavailable. There is not the slightest indication in the lease that the parties contemplated the unavailability of Area No. 1 or made any provisions for the contingency that actually occurred.

Van Dusen was not given exclusive privileges as a fixed base operator under the lease. Since its hangar and maintenance area was expressly confined to Area No. 1, and since it is clear that other areas within Logan were the subject of plans for the future by the Authority, plans which did not involve Van Dusen, a provision that Van Dusen shall have a right of first refusal in the future is

a meddlesome interference with the future operation of the airport. This is true even as to any future plans of the Authority which involve agreements with other fixed base operators. In so far as it provides for a future right of refusal in Van Dusen, the decree constitutes an invalid rewriting of the contract of the parties to provide for a contingency not foreseen by either of them. *John Soley & Sons, Inc.* v. *Jones,* 208 Mass. 561, 567. *Old Colony St. Ry.* v. *Brockton & Plymouth St. Ry.* 218 Mass. 84, 91. *Stony Brook R.R.* v. *Boston & Maine R.R.* 260 Mass. 379, 386. *Cobb* v. *Library Bureau,* 268 Mass. 311, 316. *United Shoe Mach. Corp.* v. *Gale Shoe Mfg. Co.* 314 Mass. 142, 148–149. A provision that Van Dusen must have a right of first refusal for any proposed future fixed base operation at Logan also constitutes an unwarranted intrusion into the right of the Authority to make a choice of its own, particularly in the light of the unpredictability of future developments concerning Logan and the parties.

4. The Authority's exceptions to the admission of certain documents in evidence need not be considered, since the documents all related to the negotiations between FAA and the Authority and we have ruled above that Van Dusen can claim no rights from the negotiations or the documents. No prejudice to the Authority is thus shown, since the provisions of the new final decree have been established unaffected by the challenged documents. Other exceptions to rulings upon evidence have not been argued, and are treated as waived. In any event, they relate to evidence which in no way prejudiced the Authority.

5. The final decree is reversed. The case is remanded to the Superior Court where a new final decree shall be entered declaring that Van Dusen presently occupies Area No. 5 as a tenant at sufferance; that the provisions of the lease concerning Area No. 1 are unenforceable by reason of impossibility through the fault of neither party; and that the provisions in the lease pertaining to space in Pier B, space in the administration building,

144                                           361 Mass. 144

Transamerica Ins. Co. v. Norfolk & Dedham Mutual Fire Ins. Co.

and space in the fuel storage area, and the provisions in the lease pertaining to the operation of those areas are possible of performance and are to be enforced separately. In all other respects the new final decree is to be consistent with this opinion.

*So ordered.*