FALMOUTH HOSPITAL *vs.* DOUGLAS LOPES & another.[1]

Barnstable. September 15, 1978. — November 9, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & LIACOS, JJ.

*Hospital,* Uncompensated services, Hill-Burton Act. *Contract,* Parties.

Defendants in a collection action brought by a hospital on account of
    medical services were not entitled to assert as a defense that the
    hospital was obligated to provide the services free of charge under
    the Hospital Survey and Construction Act, 42 U.S.C. § 291 et seq.
    [582-586]

CONTRACT. Writ in the First District Court of Barnstable dated February 10, 1975.

The action was heard by *Silva,* J.

*T. Richard McIntosh* for the defendants.

*Martin J. O'Malley, Jr.,* for the plaintiff.

BRAUCHER, J. The plaintiff hospital sued the defendants for $709.99 on account of medical services. The defendants asserted that they were unable to pay for the services and that the hospital was obligated to provide the services free of charge under the Hospital Survey and Construction Act, 42 U.S.C. § 291 et seq., enacted in 1946 and commonly known as the Hill-Burton Act. A judge of the District Court ruled that the defense asserted was not available to the defendants, and found for the hospital. The Appellate Division dismissed a report, and we affirm its decision.

1. *The facts.* The following facts were stipulated or found. In 1963 the hospital received $400,000 in Hill-Burton funds for construction of a new facility. In 1973 the hospital rendered the services in question at a reason-

_____

[1] Holly Lopes.

able cost of $824.56, and partial payments reduced the balance owed to $709.99. At the time the services were rendered, the defendants were unable to pay for them. During 1973 the hospital did not render uncompensated services to persons unable to pay within the definition in the 1974 State regulations. No person was denied admission because of inability to pay, but every patient was billed for services rendered. The hospital rendered nearly $68,000 of medical services in 1973 for which it was never reimbursed. Determination whether the claim was collectible was made after the services were rendered.

2. *Hill-Burton regulations.* The Hill-Burton Act provides that regulations issued under the Act "may" require that "assurance shall be received by the State from the applicant that . . . there will be made available in the facility or portion thereof to be constructed or modernized a reasonable volume of services to persons unable to pay therefor, but an exception shall be made if such a requirement is not feasible from a financial viewpoint." 42 U.S.C. § 291c (e) (1970). The regulations in force in 1963 made such a requirement. 42 C.F.R. § 52.113 (1960). We therefore assume, although we do not find it in the record before us, that the hospital gave such an assurance. The regulations in force in 1973 defined the scope of such assurances. 37 Fed. Reg. 14,721 (July 22, 1972), as amended, 42 C.F.R. § 53.111 (1977). Under those regulations the hospital would have been in "presumptive compliance" with its assurance if it budgeted and made available on request, for a fiscal year, "uncompensated services" (a defined term) at a level of ten per cent of all Hill-Burton assistance provided to it, or $40,000. It is not shown how much, if any, of the $68,000 of unreimbursed services rendered by the hospital in 1973 would have qualified as "uncompensated services" under the Federal regulations.

The statute contemplates the submission of State plans. 42 U.S.C. § 291d (1970). The Federal regulations in force in 1973 required the State agency to set forth in its

plan a procedure for the determination of a level of uncompensated services for each recipient of Hill-Burton funds and to provide for the evaluation and enforcement of the required assurances. 42 C.F.R. § 53.111 (1973). In 1974 the Massachusetts Department of Public Health (department) published Regulations Requiring a Minimum Level of Uncompensated Medical Services in Massachusetts, effective September 18, 1974 (Mass. Regs.). Those regulations require each Hill-Burton recipient to file annual compliance reports and annual petitions to establish levels of uncompensated services. Mass. Regs. §§ 9, 10. The recipient may not satisfy its obligation solely by writing off bad debts. Mass. Regs. § 5.10. Complaint procedures are established, and the department may, among other sanctions, require the hospital to render uncompensated services to an individual wrongly denied such services. Mass. Regs. §§ 20, 21.2. Sanctions seem, however, to be tied to noncompliance with a level of uncompensated services established for the recipient and thus not to apply to years prior to 1974. See Rose, Federal Regulation of Services to the Poor under the Hill-Burton Act: Realities and Pitfalls, 70 Nw. U.L. Rev. 168, 183 (1975). In any event, the record before us discloses no claim under the State regulations.

3. *The defendants as contract beneficiaries.* The Appellate Division relied heavily on "the early established rule in this Commonwealth that there must be privity of contract and that a stranger to the consideration cannot recover on the contract albeit made for his benefit." The supposed rule dates from *Mellen* v. *Whipple*, 1 Gray 317, 321 (1854), where the court, following "the recent decisions of the English courts," characterized it as a "general rule" subject to a number of exceptions. As late as *Brewer* v. *Dyer*, 7 Cush. 337, 340 (1851), the court had enforced "the principle of law, long recognized and clearly established in this commonwealth, that when one person, for a valuable consideration, engages with another, by simple contract, to do some act for the benefit of a

third, the latter, who would enjoy the benefit of the act, may maintain an action for the breach of such engagement."

In the years since 1854, the rights of intended beneficiaries have been generally recognized in other jurisdictions. See Restatement (Second) of Contracts § 135 (Tent. Drafts Nos. 1-7, 1973). In England specific performance for the benefit of such a beneficiary has been ordered in an action by the promisee. *Beswick* v. *Beswick*, [1968] A.C. 58. In Massachusetts such recognition has taken the form of numerous "exceptions" established by statute or decision. See 4 A. Corbin, Contracts § 826 (1951); Restatement of Contracts, Massachusetts Annotations, c. 6 (1935); Bernhard, Third Party Beneficiary Rights in Massachusetts, 49 Mass. L.Q. 159 (1964). In recent cases of this kind we have found it unnecessary to consider whether the 1854 doctrine should continue to be followed. See *Merrill* v. *Kirkland Constr. Co.*, 365 Mass. 110, 114-115 (1974); *Boston & Me. R.R.* v. *Construction Mach. Corp.*, 346 Mass. 513, 521 & n.5 (1963). Cf. *Guillette* v. *Daly Dry Wall, Inc.*, 367 Mass. 355, 358 (1975); *Liberty Bank & Trust Co.* v. *Lipshutz*, 5 Mass. App. Ct. 831 (1977).

The same course is appropriate in the present case. The defendants now disclaim any reliance on contract rights and seek only to enforce statutory rights. Moreover, if the rights of contract beneficiaries were fully recognized in accordance with the weight of authority elsewhere, the question would remain whether the defendants were intended or merely incidental beneficiaries. See Restatement (Second) of Contracts §§ 133 Comment *d*, 135 Comment *e*, 145 (Tent. Drafts Nos. 1-7, 1973); *Van Dusen Aircraft Supplies of New England, Inc.* v. *Massachusetts Port Auth.*, 361 Mass. 131, 141 (1972); *Boston Pub. Hous. Tenants' Policy Council, Inc.* v. *Lynn*, 388 F. Supp. 493, 496 (D. Mass. 1974). It seems unlikely that they could assert greater rights as contract beneficiaries than as statutory beneficiaries unless they could point to a specific contractual provision for the remedy now sought. Compare *Stan-*

*turf* v. *Sipes*, 224 F. Supp. 883, 890 (W.D. Mo. 1963), aff'd, 335 F.2d 224 (8th Cir. 1964), cert. denied, 379 U.S. 977 (1965) (no contract rights under Hill-Burton regulations), with *Euresti* v. *Stenner*, 458 F.2d 1115, 1118-1119 (10th Cir. 1972) (both contractual and statutory rights under Hill-Burton regulations).

4. *The defendants as statutory beneficiaries.* A preamble to interim Federal Hill-Burton regulations published in 1972 stated the following with respect to the assurance of "a reasonable volume" of services to persons unable to pay therefor: "This assurance is currently the subject of litigation in a number of suits in which the Secretary [of Health, Education, and Welfare] has been named or joined as a defendant. These cases have emphasized the imperative necessity of a new regulation designed to define the scope of the assurance more clearly and to govern its enforcement." 37 Fed. Reg. 14,720 (1972). Decisions in such cases upheld individual and class actions to enforce the assurance brought by or on behalf of poor people within the area surrounding a hospital. See *Saine* v. *Hospital Auth. of Hall County*, 502 F.2d 1033, 1034-1035 (5th Cir. 1974); *Euresti* v. *Stenner*, 458 F.2d 1115, 1117-1118 (10th Cir. 1972).

The National Health Planning and Development Act of 1974, enacted January 4, 1975, provides: "An appropriate action to effectuate compliance with any such assurance [required to be made at the time Hill-Burton assistance was received] may be brought by a person other than the Secretary only if a complaint has been filed by such person with the Secretary and the Secretary has dismissed such complaint or the Attorney General has not brought a civil action for compliance with such assurance within 6 months after the date on which the complaint was filed with the Secretary." 42 U.S.C. § 300p-2 (c) (Supp. IV 1974). In *Gordon* v. *Forsyth County Hosp. Auth., Inc.*, 409 F. Supp. 708, 721-722 (M.D.N.C. 1976), that statute was applied to deny relief to individual plaintiffs who had been sued in State courts for hospital services. Their ad-

ministrative remedies were exhausted pending appeal, and the Court of Appeals remanded the cases to the District Court. *Id.*, 544 F.2d 748, 749 (4th Cir. 1976).

Only one reported case has been brought to our attention in which a Hill-Burton assurance has been asserted as a defense to a hospital's collection action. *Yale-New Haven Hosp.* v. *Matthews*, 32 Conn. Supp. 539, 544-545 (C.P. App. Div. 1974), cert. denied, 423 U.S. 1024 (1975). But cf. *Gonzales* v. *Personal Collection Serv.*, 494 P.2d 201, 207 (Wyo. 1972) (similar defense under State statute held not proved). In the *Yale-New Haven* case the court said that even if a private party has standing as a plaintiff to enforce Hill-Burton obligations, it does not logically follow that he has a defense to a collection action by a hospital. To allow such a defense would introduce into every hospital collection case a variety of collateral issues, the court said, and the Hill-Burton Act did not imply the creation of such a defense.

This conclusion is in accord with the four criteria stated in *Cort* v. *Ash*, 422 U.S. 66, 78 (1975), for determining whether a private remedy is implicit in a statute not expressly providing one. See *Piper* v. *Chris-Craft Indus., Inc.*, 430 U.S. 1, 37-41 (1977). First, the defendants are within the class for whose "especial benefit" the hospital was required to give its assurance of a "reasonable volume" of uncompensated services. But the hospital was not required to render such services to all members of that class; it could distribute the services on any one of several bases. *Cook* v. *Ochsner Foundation Hosp.*, 559 F.2d 968, 971-972 (5th Cir. 1977). *Gordon* v. *Forsyth County Hosp. Auth., Inc.*, 544 F.2d 748, 749 (4th Cir. 1976). Thus the defense here in issue might result in giving them greater benefits than compliance with the assurance would have provided.

Second, we find no indication of legislative intent to create such a defense. The statute permits but does not direct the Federal administrator, by his regulations, to impose the requirements of an assurance of "reasonable

volume." In imposing it, the administrator left the State authorities and the hospitals considerable discretion as to the mode of compliance. Neither the statute nor the Federal regulations required that uncompensated services be rendered to any particular person.

Third, the defense might be inconsistent with the underlying purposes of the legislative scheme. See *J. I. Case Co.* v. *Borak*, 377 U.S. 426, 433 (1964). The Secretary of Health, Education and Welfare and the appropriate State agency are Congress's chosen agents for carrying out the enforcement of the reasonable volume provision. *Corum* v. *Beth Israel Medical Center*, 373 F. Supp. 558, 560 (S.D.N.Y. 1974). To allow former patients, one by one, to litigate the defense in collection actions, often in small claims courts, would not be "a rational, nondiscriminatory and appropriate means of making the policy of the statute effective." See *Bruce's Juices, Inc.* v. *American Can Co.*, 330 U.S. 743, 752 (1947) (rejecting Robinson-Patman Act violation as defense to collection action). Courts are ill-equipped in the first instance to administer and enforce the provisions of the Hill-Burton Act. Cf. *Boston Pub. Hous. Tenants' Policy Council, Inc.* v. *Lynn*, 388 F. Supp. 493, 498 (D. Mass. 1974) (no judicial cure-all for problems of low income housing). Without the participation of the responsible administrative officials, judicial rulings on the complex and uncertain application of the Federal and State regulations to particular situations might well give rise to conflict and confusion. See *National R.R. Passenger Corp.* v. *National Ass'n of R.R. Passengers*, 414 U.S. 453, 461-464 (1974).

Fourth, patients in the defendants' position have since 1974 had an adequate State administrative remedy. Individuals wrongly denied free services may complain to the Department of Public Health. The department has available to it compliance reports and other detailed information against which to judge a hospital's compliance and determine what remedial measures are appropriate and effective. We decline to inaugurate a competing system.

5. *Contract defenses.* Defendants argue in the alternative that the hospital had a legal duty to provide free services and thus the contract sued on was without consideration, or that we should find a free service obligation implied in the contract between the parties. If Federal law required the hospital to serve these particular defendants free of charge, they would have a good contract defense. However, these arguments add nothing to the statutory defense already discussed.

*Order dismissing report affirmed.*