**Michael MICHAUD, et als,**
**Plaintiffs**
**vs.**
**Charles REARDON, et als.,**
**Defendants**

**No. 54389**

Superior Court/Suffolk, ss.
Commonwealth of Massachusetts

**November 17, 1982**

**Barry Barkow,** counsel for plaintiff.
**William J. Lundregan, Francis X. Bellotti, A.G., William D. Luzier, Jr., J. C. Casey, W. Barry McDonald,** counsels for defendants

## RULINGS, ORDER AND MEMORANDUM OF DECISION ON PLAINTIFFS' APPLICATION FOR FURTHER INJUNCTIVE RELIEF
### Background

By their complaint filed April 15, 1982 plaintiffs, four inmates then incarcerated at the Essex County House of Correction and Jail situated in Lawrence, Massachusetts (the Jail), seek equitable and declaratory relief as well as money damages on account of their purportedly "unhealthy and dangerous living conditions" at the Jail. The defendants in this action are the Sheriff of Essex County, the County Commissioners for Essex County, the Treasurer of Essex County and the Commissioner of Correction of the Commonwealth of Massachusetts. All of those persons are party defendants in their official capacity and there is no claim or suggestion that any defendant has engaged in any intentional wrongdoing.

In the introduction to their complaint, plaintiffs claim that "defendants' failure to provide adequate toilet and plumbing facilities violates plaintiffs' rights" under the Eighth and Fourteenth Amendments of the United States Constitution; under Article XXVI of the Massachusetts Declaration of Rights, under various provisions of the Massachusetts General Laws including the Commonwealth's Civil Rights Act, **i.e.,** G.L. c. 12, secs. 11H-11I, and under the federal Civil Rights Act, **i.e.,** 42 U.S.C. sec. 1983.

In sum, plaintiffs make their claims on behalf of themselves and on behalf of members of the class of inmates similarly situated and incarcerated at the Jail and who they purportedly represent as alleged in paragraphs 7-10 of their Complaint. The facts material to plaintiffs' claims are set out in paragraphs 11-19 of their complaint and for the most part have not been controverted by defendants. Plaintiffs allege factually that they are incarcerated at the Jail in cells which lack either a flush toilet, a sink, or running water. They assert that they and other inmates at the Jail are provided in their cells with five-gallon buckets in which they must urinate and defecate, that those buckets are made either of metal or of plastic, that covers for those buckets are not always provided, that the buckets which are made of metal are old and rusted and that the buckets which are fabricated of plastic turn black with use. Plaintiffs point out that inmates at the Jail are generally permitted to empty their buckets only once each day or less frequently depending upon security constraints. At paragraph 19 of their complaint, plaintiffs conclude their factual claims by stating:

> "The bucket system is totally without penological justification and threatens the physical, mental

and emotional health and well-being of the prisoners who must endure constant stench, live under nauseating conditions, steel themselves for a degrading and indecent experience each time they must urinate or defecate, endure that revolting experience, and live with the threat of serious, continuing health hazards posed by such unsanitary conditions."

In addition to compensatory and punitive damages plaintiffs seek a declaration that the conditions under which they and other inmates are being held at the Jail violate their constitutional rights and they request injunctive relief requiring defendants to no longer house inmates at the Jail in cells which lack the sanitary facilities required by the regulations of the Commonwealth's Department of Public Health.

In four affidavits attached to their Memorandum in Support of Motions for Preliminary Injunction and for Class Certification filed June 9, 1982, the individual plaintiffs assert detailed information in support of the factual allegations set out in their complaint. The information presented, not controverted by defendants, both disgust and shock the reader of those affidavits. Also in their Memorandum at page 2, plaintiffs refer to the sanitary conditions in cells at the Jail as degrading and indecent and this Court agrees and so finds. The affidavit filed by the Superintendent of the Jail concurs with the details set out in plaintiffs' affidavits and specifically notes "while locked in cells, the inmates must use the bucket system."

**Procedural History**

The papers with the case file in this action indicate its procedural history. Plaintiffs apparently sought a preliminary injunction in June, 1982 and a Justice of this Court by an Order dated June 11, 1982 granted interim relief which ordered defendants to provide to inmates in any cell at the Jail "lacking a flush toilet and a sink with hot and cold running water" the opportunity at least "once every three hours . . . to use a flush toilet under . . . (reasonable) security provisions . . ." and to have for emergency use in their cells "a suitable container fitted with a cover . . . and the opportunity twice daily to empty the container" which is required to be thoroughly cleaned, disinfected and deodorized. By a letter dated June 22, 1982 to that Justice, plaintiffs' counsel indicated that the parties had agreed to withdraw and to continue indefinitely so much of plaintiffs' application for interlocutory relief which sought the "ultimate relief requested" in the complaint "until such time as any party may remark the motion for hearing pursuant to Massachusetts Rule of Civil Procedure 65." That letter also indicated that "Until such (sic) time may occur, the parties shall attempt diligently to resolve the issues raised in this case." Filed also on June 22, 1982 is an affidavit from the Master of the Jail which indicates that efforts were underway to prepare plans to rectify the unsanitary conditions at the Jail, that funding would be applied-for, that it would be very costly to install toilet and washing facilities in cells at the Jail, that such installation might not be feasible, and that, if funding was forthcoming, the work to rectify the unsanitary conditions would not be completed until fiscal year 1985. This Court is somewhat nonplussed by that Affidavit's vagueness and by the indefiniteness of its indications of the possibility of rectification of the unsanitary conditions at the Jail described above.

This action was certified as a class action by a Justice of this Court on June 25, 1982. The motion which that Justice allowed indicates "the class is comprised of the named plaintiffs and all persons who are or may be inmates at the Essex House of Correction and Jail/Lawrence." What I infer to be a falling-out among the parties apparently led to the current application by plaintiffs for the ultimate injunctive relief sought by their Complaint.

## Rulings, Order and Memorandum of Decision

Plaintiffs' statutory claim for relief is based primarily upon two regulations promulgated by the Commonwealth's Department of Public Health. 105 CMR 450.113 entitled "Toilet and Handwashing Sink and Locked Cell" requires and provides in relevant part that:

> Each cell (situated in institutions such as the Jail) within which an individual may be locked for any part of a 24-hour day has working toilet and working handwashing sink with hot and cold running water . . . Each toilet shall be raised off the floor of the inmate's cell and shall be capable of being flushed from the interior of the cell. An existing facility which does not comply with this requirement may install chemical toilets and provide sanitary water for drinking and handwashing, but shall comply fully within two (2) years from the effective date of these regulations. (It has been agreed that the effective date of the regulations is May 11, 1978).

That regulation specifically refers to 105 CMR 450.406 which provides in relevant part that:

> (A) For each correctional facility or detention center where the Program Director finds that major renovation or construction is required to provide plumbing . . . facilities . . . which comply with 105 CMR 405.113 . . . the Program Director will accept a plan to correct deficiencies in an expeditious manner, but with full correction to be completed no later than two (2) years from the effective date of these regulations (again, agreed to be May 11, 1978) . . .
> (B) In instances where the superintendent or administrator requests a longer timetable for completion of the maximum of

two years allowed under CMR 450.406(A), the Program Director may grant a waiver of this deadline and extend the deadline for a period not to exceed three additional years provided that the following conditions are met:
> (1) Adequate funds are appropriated, for the necessary renovations or constructions no later than January 1, 1979.
> (2) The superintendent or administrator agrees to submit architectural plans no later than July 1, 1980, and a construction schedule no later than October 1, 1980.
> (3) During the waiver period, the Program Director receives evidence that the project is moving expeditiously toward completion.
> (4) The correctional facility provides such temporary plumbing and ventilation facilities as the Program Director requires during the additional period allowed for completion.

None of 105 CMR 450.406's requirements for the permissive grant of a waiver and three-year extension of 105 CMR 450.113's two year deadline of May 11, 1980 have been met.

As inferred above, plaintiffs apparently became dissatisfied with the progress made by defendants in complying with 105 CMR 405.113 and at the hearing on plaintiffs' application for further injunctive relief defendants articulated essentially two defenses to plaintiffs' application. Defendants first claimed that in general and pursuant to regulations of the Commonwealth's Department of Correction plaintiffs have no standing to seek the relief they have applied for. Defendants point to Department of Correction Regulation 904.13 which clearly provides to the defendant Commissioner of Corrections the remedy of petitioning "to the Superior Court in equity in the county where . . . a facility (such as the Jail) is located for an order to

close the facility or for other appropriate relief.'' Defendants also defend on the basis that the relief sought here by plaintiffs requires administrative resolution by the executive branch of government with legislative funding and not by judicial decree, and that any action by this Court would intrude upon an area committed to and best responded to by the expertise of defendants.

In response, with respect to the standing issue, I note initially as suggested in plaintiffs' very helpful Post-Hearing Memorandum on Motion for Preliminary Injunction that private-party plaintiffs, such as plaintiffs here who are the persons with the greatest stake in enforcing administrative regulations, have well-established rights to press their claims against administrative bodies which have failed to enforce those regulations. 105 CMR 450.113 and 450.406 clearly have the force and effect of law. See e.g., **Niles v. Boston Rent Control Administrations,** 6 Mass. App. Ct. 135, 149 (1978). That plaintiffs here are conferred a private cause of action for the enforcement of rights granted under state law is clear even though the statute does not explicitly provide one, from the ruling in **Falmouth Hospital v. Lopes,** 376 Mass. 580, 585-586 (1978), citing **Court v. Ash,** 422 U.S. 66, 78 (1975). Applying the tests set out in **Court v. Ash,** I rule that plaintiffs are within the special class for whose benefit the regulation was promulgated, that there is no evidence of a legislative or regulatory intent to deny a private cause of action, that a private cause of action is not inconsistent with the regulatory scheme, and, finally that there is no adequate state administrative remedy as evidenced by the continued failure of the Department of Public Health, which has the responsibility to enforce the regulations here, to secure compliance over the past four years. Moreover, and perhaps most significantly, plaintiffs should be permitted to seek relief under both the federal and state constitutions, under the federal Civil Rights Act and under the Commonwealth's Civil Rights Act.

Alternatively and perhaps a sounder basis upon which to predicate their standing plaintiffs' standing to seek relief depends upon whether their rights have been violated. It seems quite clear that the conditions under which they and other inmates are incarcerated at the Jail violate both the cruel and unusual punishment clause of the Eighth Amendment of the United States Constitution and the provisions of Article XXVI of the Massachusetts Declaration of Rights which proscribes cruel and unusual punishment. Both the federal and the Commonwealth's constitutional provisions which prohibit cruel and unusual punishments in my opinion limit both how long and whether a person can be deprived of his or her liberty, and restrict as well the ill-treatment to which he or she can be subjected to while incarcerated. See **Rhodes v. Chapman,** 452 U.S. 337, 101 S. Ct. 2392 (1981). Again, in my opinion, both the Eighth Amendment and Article XXVI require that prison officials provide the basic necessities of life to those in their keep including minimal sanitary facilities. An inmate's right to adequate sanitary facilities has been the focus of concern in much litigation seeking the protection of the Eighth Amendment. More specifically standard or non-hygienic toilet facilities form part of the basis for the rulings made in **Jones v. Wittenberg,** 421 F. Supp. 886 (M.D. Fla 1976) and in **Inmates v. Eisenstadt,** 360 F. Supp. 676 (D. Mass. 1973). In **Bell v. Hall,** 392 F. Supp. 274 (D. Mass. 1975), dealing with MCI Bridgewater, the court found that the cumulative effect of the use of ''chamber pots'' as toilets, the unsanitary conditions involved in emptying them and the shortage and conditions of places to wash connoted institutional disdain for the inmates and was bound to produce ''feelings of depressions and despair'' which violated the Eighth Amendment ban on cruel and unusual punishment. In another action issuing remedial orders concerning the

Essex County Jail and House of Correction at Salem, the court observed "interior plumbing is certainly the norm of American life, even in prisons, and privacy and personal hygiene is generally equated with minimal human dignity." DiMarzo v. Cahill, Civil No. 77-939-S (D. Mass. July 8, 1977), aff'd. 575 F.2d 15 (1st Cir.), cert. denied 439 U.S. 927 (1978). Clearly then, even apart from the regulations relied upon by plaintiffs, they have standing here to pursue the claims they seek under federal and state constitutional law.

This Court now turns to defendants' final assertions that the relief sought by plaintiffs here is best left to other branches of government to provide and that it is inadvisable for this court to become involved in the morass of remedial orders. This court tends to agree with those assertions. This court notes with some interest the failures of judicial oversight of prisons in other jurisdictions and the inability of many courts to achieve even the most basic relief sought by inmates after judicial determinations of the existence of conditions which offend the Eighth Amendment. Although finding the defendants liable to provide adequate sanitary facilities in cells at the Jail, this Court specifically rejects any institutional involvement of similar remedies including seriatim orders. Very simply, defendants will be and are given the choice, within the time limits prescribed by 105 CMR 450.406 which is chosen arbitrarily as a suitable time limit, of having cells at the Jail with adequate sanitary facilities permitted to be occupied by inmates or having those cells not permitted to house inmates.

**Order**

On the basis of the above, this Court orders that any cell at the Jail within which an inmate may be locked for any part of a 24-hour day which does not have a working toilet and a working handwashing sink with hot and cold running water shall not be occupied after May 11, 1983 and for such time thereafter until such facilities are installed in a cell at the Jail. I order this relief to enter as a final judgment there being no just reason for delay.

<div align="right">

**Paul G. Garrity**
**Justice of the Superior Court**