**MONUMENT SQUARE ASSOCIATES, INC., Plaintiff,**

v.

**The RESOLUTION TRUST CORPORATION as receiver for Home Owners Savings Bank, F.S.B. and the Federal Deposit Insurance Corporation, Defendants.**

Civ. A. No. 90–12060–T.

United States District Court,
D. Massachusetts.

Dec. 13, 1991.

---

875

. Jan A. Glassman, Mofenson & Nicoletti, Newton, Mass., for plaintiff.

Ben L. Fernandez, Peabody & Arnold, Boston, Mass., for defendants.

## MEMORANDUM

TAURO, Chief Judge.

Plaintiff, Monument Square Associates, Inc. ("Monument Square"), contends that defendant, Resolution Trust Corporation ("RTC"),[1] as receiver for Home Owners Savings Bank ("Home Owners"), wrongfully disaffirmed a rental agreement. At issue is the receiver's authority to repudiate contracts under the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821 *et seq.*

---

**1.** Congress created RTC to resolve insolvencies in the banking industry. *See* 12 U.S.C. § 1441a(b)(3); 12 C.F.R. Chapter XVI (1991).

On April 1, 1986, plaintiff leased space to Home Owners at 465 and 467 Congress Street, Portland, Maine ("First Lease").[2] On October 23, 1986, the parties entered into a second lease for 477 Congress Street ("Second Lease"). On April 27, 1990, the Office of Thrift Supervision appointed RTC as conservator for Home Owners for the purpose of reorganizing its affairs. On May 22, 1990, RTC disaffirmed[3] the Second Lease because Home Owners was not occupying the property. On September 7, 1990, RTC was appointed receiver for Home Owners. On December 20, 1990, RTC disaffirmed the First Lease.

Whether RTC could disaffirm the Second Lease, without disaffirming the First Lease along with it, is the subject of summary judgment motions.

## I.

■ RTC moves for summary judgment, arguing that the Second Lease was part of a divisible contract and, therefore, that it had a right to disaffirm that lease without disaffirming the First Lease. Plaintiff argues that there was only one contract that embodied the two leasing arrangements. It, therefore, contends that RTC's "partial repudiation" was improper. It further argues that RTC's disaffirmance of the First Lease on December 20, 1990 was not within a reasonable time of RTC's appointment as conservator and, therefore, was ineffective.

## A.

To support its contention that the Second Lease was divisible from the First Lease, RTC argues that the two rental agreements were entered into at separate times, and each agreement contained its own terms, including separate rental fee arrangements. In addition, both the first

lease and the second lease contained a severability clause which stated that if any provision shall be "invalid or unenforceable," the remainder "shall not be affected."

Plaintiff counters that the second lease was merely an *amendment* of the initial lease agreement. In support, plaintiff points out that the terms of the Second Lease are contained in a document called "Lease Amendment." Plaintiff further claims that the Second Lease agreement could not stand on its own but, rather, referenced the First Lease agreement to fill in certain terms (*e.g.*, it stated: "All the provisions of the lease dated April 1, 1986 between Landlord and Tenant will apply with the exception of those items outlined below."). Finally, plaintiff claims that this Lease Amendment required plaintiff to make architectural improvements, for which Home Owners agreed to "extend the base lease [covering the First Lease and the Second Lease] for two additional years...." Plaintiff's Opposition at 2.

The issue is whether the Second Lease constitutes a contract divisible from the First Lease. Defendant contends that this court should look to bankruptcy cases in interpreting Section 212(e) of FIRREA. *See* 50 Fed.Reg. 48,970, 48,976 (In defining and applying regulations governing the receiver's power to reject leases "the receiver [sh]ould seek guidance from analogous treatment of contracts in court decisions under 11 U.S.C. 365.").

■ Generally, a bankruptcy trustee must assume or reject executory contracts "in their entirety." *In re Cutters, Inc.*, 104 B.R. 886, 888 (Bankr.M.D.Tenn.1989) (interpreting 11 U.S.C. § 365(a)). A single document which "purports to contain a single contract but in reality contains separate severable agreements," however, may con-

---

2. At the time the parties entered into this lease arrangement, plaintiff was known as "Commerce Building, Inc." and defendant Home Owners was known as "Sun Savings and Loan Association F.A."

3. Section 212(e)(1) of FIRREA provides that the conservator or receiver for any insured depository institution may disaffirm or repudiate any contract or lease—
(A) to which such institution is a party;

(B) the performance of which the conservator or receiver, in the conservator's or receiver's discretion, determines to be burdensome; and
(C) the disaffirmance or repudiation of which the conservator or receiver determines, in the conservator's or receiver's discretion, will promote the orderly administration of the institution's affairs.
12 U.S.C. § 1821(e)(1).

stitute a divisible contract, the severable part of which may be rejected. *Id. See also In re Chemtoy Corp.,* 19 B.R. 475, 481 (Bankr.N.D.Ill.1982) ("[A] contract is considered severable where one party's performance consists of several distinct and separate items and the price to be paid by the other party is apportioned to each of the items to be performed.").

■ This court looks to state law to determine the divisibility of a contract. According to Maine law, under which this lease is to be governed,[4] "the severability or entirety of a contract depends upon the intent of the contracting parties...." *Dehahn v. Innes,* 356 A.2d 711, 716 (Me.1976). The "true test" is "whether the parties assented to all the promises as a single whole, so that there would have been no bargain whatever if any promise or set of promises were struck out." *Id.* (citation omitted).

RTC points out that there is no Maine case on the divisibility of a lease. But, a Massachusetts case in which the Supreme Judicial Court found that a lease could be divisible is directly on point. *See Van Dusen Aircraft Supplies, Inc. v. Massachusetts Port Authority,* 361 Mass. 131, 279 N.E.2d 717 (1972). The court there found that the lease was "so structured and worded as to make it practical to regard it as divisible." 361 Mass. at 138, 279 N.E.2d at 722. Each of the areas leased were "separately considered in the wording and structure of the lease." *Id.* The rental payments for each area were "separately and unconditionally stated." *Id.*

Here, the leases were not "assented to as a single whole." Rather, they were executed on different dates, and each concerned property located in separate build-

ings. Plaintiff admits that, for bookkeeping purposes, it maintained two rental ledgers, one for each lease. Affidavit of Judy Trudeau dated December 17, 1990 Ex. B, C.

■ Accordingly, this court finds that the lease was divisible, and that it was within RTC's power, as conservator, to disaffirm the Second Lease, while leaving the First Lease intact.[5]

### B.

■ Plaintiff contends that, on April 27, 1990, RTC was appointed as conservator, and it was not until December 20, 1990 that RTC disaffirmed the lease agreement. Plaintiff argues that this delay was unreasonable as a matter of law.

RTC argues that it had a right to disaffirm, first as conservator and then as receiver. In other words, RTC argues that the reasonable period to repudiate, once expired, can be "revived" by a change in RTC status. It claims that the conservator's purpose is to reorganize an institution and preserve its assets, while the receiver's purpose is to liquidate an institution. *See* 12 U.S.C. § 1821(d)(2)(D), (E). As a result, a contract which may be advantageous to a conservator might be "burdensome" to a receiver.

Plaintiff relies on *Resolution Trust Corp. v. Cedarminn,* No. 4–90–828, slip op., 1991 WL 335508 (D.Minn. March 4, 1991), in which the court rejected this same argument. In that case, RTC conceded that

> the 'reasonableness' requirement is a condition precedent to exercise of the repudiation power and [it] agree[d] that

---

4. The First Lease states that it "shall be governed ... by the laws of the state in which the Building is located." Second Amended Compl. Ex. 1 at 19. The lease agreement was for property located in Maine.

5. Plaintiff further argues that, even if RTC had the power to disaffirm the Second Lease, it acted improperly because it failed to make a finding that the lease was burdensome. The conservator "may repudiate a contract the performance of which the conservator believes, in his discretion, would be detrimental to the con-

servation of the assets of the institution." *Union Bank v. Federal Savings and Loan Ins. Corp.,* 724 F.Supp. 468, 471 (E.D.Ky.1989) (interpreting 12 U.S.C. § 1821(e)(1)). This court should not interpret the term "burdensome" in a restrictive manner. Here, RTC stated, and plaintiff admits, that Home Owners was not occupying the premises that were the subject of the Second Lease. It is reasonable to conclude that such an arrangement would be burdensome to a bank in conservatorship.

if the time before exercise of the power is found to have been unreasonable, the power is forfeited.

*Id.,* slip op. at 17, n. 5. The court there determined that RTC could not "revive its otherwise expired ability to repudiate," simply because its status had changed from conservator to receiver. *Id.* at 18. *See also Resolution Trust Corp. v. United Trust Fund, Inc.,* 775 F.Supp. 1465, 1467–68 (S.D.Fla.1991) (same).

The *Cedarminn* court's interpretation would force RTC, as conservator, either to reject all contracts or to risk subjecting any subsequent receiver to additional liabilities. Acting as receiver, RTC would have no power to repudiate contracts in cases of a lengthy conservatorship. Such a reading of the receiver's powers would lead to undesirable results.

In addition, the language of the statute supports this court's less restrictive interpretation. It states that the "conservator or receiver" may disaffirm a contract "within a reasonable time following such appointment." *See* 12 U.S.C. § 1821(e)(2). The statute does not impose any restrictions on the authority to disaffirm, other than that of a reasonable time limitation. Here, two appointments were made, and the statute gives RTC the authority to disaffirm a contract following either appointment. Plaintiff's reading of the statute would effectively divest the receiver of the authority given to it by Congress. Accordingly, this court finds that RTC has the power to disaffirm a contract while acting as conservator and then as receiver. The only issue, then, is whether RTC disaffirmed the leases within a reasonable time.[6]

■ Plaintiff contends that the reasonable period is, at the very most, within 90 days. *See e.g., Cedarminn, supra,* slip op. at 19 (14 months unreasonable). In *Cedarminn,* the court found that

a reasonable period of time will always be fact sensitive, but it will always have certain common characteristics. It must be a chronologically short period in order to serve Congress' intent of swiftly bringing order to the failed institution. It should always occur approximately 90 days after appointment subject to any situation relevant to the determination of whether a particular lease is burdensome.

*Id.* at 16 (citation omitted). Plaintiff, therefore, argues that RTC's disaffirmance of the First Lease three and a half months after its appointment as receiver was not within a reasonable time.[7]

This court rejects plaintiff's suggestion that RTC must disaffirm contracts within 90 days. The statute is silent as to any time limit.[8] It merely provides that the conservator or receiver "shall determine whether or not to exercise the rights of repudiation ... within a reasonable period following such appointment." 12 U.S.C. § 1821(e)(2). Whether RTC acted within a reasonable period should be determined by looking at the circumstances of each case.[9] *See Union Bank v. Federal Savings and Loan Ins. Corp.,* 724 F.Supp. 468, 471 (E.D.Ky.1989).

---

**6.** The parties agree that this is a mixed question of law and fact for the court to decide.

**7.** Plaintiff does not challenge the reasonableness of time with regard to the Second Lease. RTC was appointed conservator on April 27, 1990, and it disaffirmed the Second Lease approximately one month later, on May 22, 1990.

**8.** Indeed, Congress initially proposed limiting the reasonable period to 90 days, *see* H.R.Rep. No. 54(I), 101st Cong., 1st Sess. 331 (1989), *reprinted in* 1989 U.S.C.C.A.N. 86, 127, but subsequently eliminated that provision.

**9.** It is evident that the courts in both *Cedarminn* and *Owens,* the two cases on which plaintiff

relies, looked to the circumstances before them in deciding whether any delay was reasonable. In *Owens,* for example, the court invalidated RTC's repudiation of an employment contract two months after RTC's appointment as receiver, after RTC had made a determination that "Owens was crucial to the orderly administration of First Savings." *Owens,* slip op. at 8. The court found that "RTC asked [Owens] to stay. He helped RTC familiarize itself with the credit on the books ... and generally assisted in preparing First Savings for sale by the RTC." *Id.* Those same facts do not pertain here. There is no evidence that, once RTC became the receiver, it indicated a desire to continue leasing the premises on Congress Street, and then repudiated.

Here, plaintiff admits that RTC paid rent on the Second Lease through December 31, 1990. Plaintiff contends, however, that it lost value on the rental because the real estate market was rapidly declining. Presumably, if Home Owners had vacated the building earlier, plaintiff could have rented the building for a higher rental fee to a different lessee. The fact of a rapidly declining real estate market during the period September–December, 1990 does not make RTC's delay unreasonable. Plaintiff has not indicated that RTC acted in bad faith, nor has it pointed to any other circumstances to indicate that RTC acted unreasonably. Accordingly, this court finds that, on these facts, an interim of three and a half months between RTC's appointment and RTC's disaffirmance of the contract was not unreasonable.

## II.

For all of the foregoing reasons, Defendant RTC's Motion for Summary Judgment is ALLOWED, and Plaintiff Monument Square's Motion for Summary Judgment is DENIED.

An Order will issue.