HOLMES REALTY TRUST *vs.* GRANITE CITY STORAGE CO., INC.

No. 87-89.

Norfolk.  November 13, 1987. — January 15, 1988.

Present: DREBEN, CUTTER, & FINE, JJ.

*Landlord and Tenant,* Lease as contract, Covenant to pay rent. *Summary Process,* Notice to quit. *Contract,* Lease of real estate, Construction of contract. *Practice, Civil,* Summary judgment, Consolidation of actions.

In a summary process action by a landlord seeking to evict a tenant from commercial premises in which it was undisputed that, for several months prior to receipt of a valid notice to quit, the tenant had failed to pay the rent called for in the lease, allowance of the landlord's motion for summary judgment was error where, notwithstanding the plain language of the parties' lease, the circumstances attendant upon its execution and the language of another agreement executed virtually simultaneously with the lease, viewed in a light favorable to the tenant, suggested the existence at least of an ambiguity in the meaning of the lease; and where a material factual issue existed whether there were "clear indications" that the parties intended that the covenant in the lease to pay rent be dependent upon certain promises contained in the separate agreement. [275-279]

On appeal by a tenant from a judgment in favor of the landlord of commercial premises in a summary process action, this court, in vacating the judgment, determined that, on its view of the triable issues in both the summary process action and in an action commenced by the tenant alleging the landlord's breach of another agreement executed virtually simultaneously with the lease, the two cases were so intertwined that they should be consolidated for trial. [279]

SUMMARY PROCESS. Complaint filed in the Quincy Division of the District Court Department on May 29, 1986.

On appeal to the Superior Court Department a motion to consolidate was heard by *Robert W. Banks,* J., and the case was heard by him on a motion for summary judgment.

*Jonathan Braverman* for the defendant.
*Gary S. Matsko* for the plaintiff.

FINE, J. In a summary process case involving commercial real estate, a Superior Court judge awarded summary judgment to the landlord, Holmes Realty Trust, Inc. (Holmes Realty), against the tenant, Granite City Storage Co., Inc. (Granite City). It was undisputed that, for several months prior to the receipt of a valid notice to quit, Granite City had failed to pay the rent called for in the lease. Granite City asserts that a genuine issue of material fact exists in that (1) the lease was part of a larger transaction between these and related parties which included another agreement (the exchange agreement) executed virtually simultaneously with the lease, and covering some of the same subject matter, and (2) Holmes Realty had violated that other agreement in material respects.[1]

Before the summary process action was filed, Donald Mc-Nally, owner of Granite City, had brought an action in the Superior Court against Rosemary Kelly, owner of Holmes Realty, for breach of the exchange agreement. That action is pending. A motion filed by Granite City in the instant case to consolidate the two cases was denied. The judge in the summary process case ruled, as matter of law, in essence, that, because the property involved was nonresidential, Granite City's obligation under the lease to pay rent was independent of any contractual obligation on the part of Holmes Realty. As a result of an order imposing, as a condition of Granite City's right to litigate the summary process action in the Superior Court, a requirement that it pay the rent as it became due, the rental payments called for in the lease have been kept current.

On appeal, Granite City relies upon the provisions of the exchange agreement, the circumstances attendant upon the execution of that agreement, and Holmes Realty's breaches of the exchange agreement. Granite City contends that, taking its whole situation into account, its temporary withholding of rent did not entitle Holmes Realty to gain possession. Holmes Realty

---

[1] The parties also simultaneously entered into a third agreement, a promissory note, the details of which were included in the exchange agreement. Because the promissory note does not bear upon the question of summary judgment, we refer only to the lease and the exchange agreement in our analysis.

asserts in response that Massachusetts law is clear that, so long as there has been no actual or constructive eviction, a nonresidential tenant's obligation under a lease to pay rent is independent of any obligation on the landlord's part. For reasons which we proceed to state, we think there was insufficient basis for the allowance of the summary judgment motion. Accordingly, we vacate the judgment. Because, on our view of the case, justice requires, we also order the cases consolidated for trial.

1. *Factual background.* The motion judge had before him the pleadings, the relevant documents (the lease and the exchange agreement), and the affidavits of the principals in the respective business entities. The following picture emerges from these materials which, in reviewing the allowance of the motion for summary judgment, we describe from the point of view of Granite City. Prior to November 19, 1984, McNally owned fifty percent of the stock of Granite City and a forty percent beneficial interest in Holmes Realty. Kelly owned the remaining fifty percent of the Granite City stock and a sixty percent beneficial interest in Holmes Realty. Granite City operated a storage business out of facilities owned by Holmes Realty. In an agreement dated November 19, 1984 (the exchange agreement), executed in December, 1984, McNally and Kelly restructured their positions. The exchange agreement provided for a transfer to Kelly by McNally of his entire interest in Holmes Realty and a transfer to McNally by Kelly of all of her stock in Granite City. Kelly agreed to lend Granite City $110,000, secured by the lease and by McNally's personal guaranty. The parties agreed that Granite City would enter into a lease with Holmes Realty for the existing business premises. The rent, the term, and other details, were specified. In addition, Holmes Realty agreed to build, prior to July 1, 1985, a second-floor addition to the leased premises. The agreement was labeled one of "mutual promises and covenants."

McNally claims that, because Granite City had been operating at a loss, the promise by Holmes Realty to build the additional floor was a critical inducement for Granite City to enter into the lease, and that Kelly was aware of this fact. McNally stated in his affidavit: "At the time of negotiating the terms of

the overall transaction, Kelly expressed concern over Granite [City's] unprofitability and acknowledged that Granite [City] would continue to operate at a loss unless additional space was added to the existing facilities. Kelly's representations with respect to constructing the second floor were critical inducements, without which I would not have entered into the lease, note and agreement."

The exchange called for in the agreement took place, and, simultaneously, Holmes Realty and Granite City entered into the lease. The lease does not refer to the exchange agreement or, in particular, to the promise to construct the second story. The lease contains a provision that it "shall constitute the only agreement between the parties relative to the demised premises and no oral statements and no prior written matter not specifically incorporated herein shall be of any force or effect. In entering into this Lease, the Lessee relies solely upon the representations and agreements contained herein."

Holmes Realty never built the second floor promised in the exchange agreement. Granite City continued to pay rent until March of 1986, when it commenced the civil action against Holmes Realty alleging that the failure to build the second floor was a breach of the exchange agreement. In conjunction with that claim, Granite City began withholding rent. In May of 1986, Holmes Realty instituted the summary process action against Granite City.

2. *The lease and the exchange transaction may be viewed as one transaction.* Whether the lease and the exchange agreement should be read together as one integrated agreement is a question of fact which turns upon the intention of the parties. Holmes Realty relies upon the language appearing in the lease which, read alone, is inconsistent with a finding that the parties intended to have the two agreements construed as a unified agreement. It is true that nowhere in the lease is there a reference to the exchange agreement, and that the lease states that "no prior written matter not specifically incorporated herein shall be of any force or effect." Moreover, the lease also states that "the [l]essee relies solely upon the representations and agreements contained herein." Notwithstanding the plain language of the lease, however, the circumstances attendant upon its

execution and the language of the exchange agreement, viewed in a light favorable to Granite City, suggest the existence at least of an ambiguity in the meaning of the lease in the over-all context. See *Robert Indus., Inc.* v. *Spence,* 362 Mass. 751, 753-754 (1973).

It would be open to a fact finder examining the language of the lease and the exchange agreement to treat them as intended by the parties to be parts of a single transaction. This would be justified by (a) the evidence put forward by Granite City of the business context, (b) the results intended to be accomplished, (c) the identity of the subject matter addressed in the agreements, and (d) the simultaneous execution of the two documents. See *Chelsea Indus., Inc.* v. *Florence,* 358 Mass. 50, 55-56 (1970). *Chelsea Industries* involved two agreements, an employment contract and a stock purchase agreement. The former agreement was contemplated by the latter agreement, and the former agreement was a major inducement for the employee to enter into the latter agreement. The court held that the provisions of the separate agreements were to be treated as one single transaction. To have interpreted them independently, according to the decision, would have rendered illusory the protections given the employee by the employment contract. *Id.* at 56.

Similarly, in the instant case, the lease and the exchange agreement are closely interrelated. The most important terms of the agreement for renting the premises, although spelled out in much greater detail in the lease, are included in both agreements. According to the McNally affidavit, the provision in the exchange agreement for the construction of additional space, which had a significant bearing on the future profitability of Granite City, was a major inducement for Granite City to enter into the lease, and perhaps also for McNally to accept the other aspects of the exchange agreement. McNally changed his position by performing significant aspects of the exchange agreement. If Granite City may now be deprived of the use of the property to conduct its business, and also of the extra space on which it counted, it may be that McNally's main purpose in participating in the arrangement would be defeated. On the

facts stated, viewed in a practical light from Granite City's perspective, therefore, a reasonable jury might not read the lease as a separate agreement.

3. *The covenant to pay rent is not necessarily independent.* Quoting from a decision of the Bankruptcy Court, Holmes Realty relies upon the following proposition: "Massachusetts law is clear. The tenant in a nonresidential lease has the obligation to pay the rent as specified. This obligation is considered an independent covenant, so that the tenant has no right to withhold rent because of some breach by the landlord." *In re J.A.G., Inc.,* 7 Bankr. 624, 627 (D. Mass. 1980).

There is great doubt whether the formulation remains a correct statement of Massachusetts law.[2] We need not decide the

---

[2] There is support for the proposition in a number of Massachusetts decisions dealing, after *Boston Housing Authy.* v. *Hemingway,* 363 Mass. 184 (1973), with commercial tenancies, and before the *Hemingway* case with both residential and commercial tenancies. See *Taylor* v. *Finnigan,* 189 Mass. 568, 575 (1905); *McMillan* v. *Wickstrom,* 244 Mass. 159, 163 (1923); *A.W. Banister Co.* v. *P.J.W. Moodie Lumber Corp.,* 286 Mass. 424, 426-427 (1934); *Barry* v. *Frankini,* 287 Mass. 196, 201 (1934); *Stone* v. *Sullivan,* 300 Mass. 450, 455 (1938); *Sniger* v. *Fentin,* 4 Mass. App. Ct. 215, 217 (1976).

We note, however, that the last reported Massachusetts decision relying upon the stated proposition was a decision of this court in 1976. The last such decision of the Supreme Judicial Court was in 1938. Both the 1976 Appeals Court decision and the most recent Supreme Judicial Court decisions cited as authority the formulation of the independent covenant rule which appeared in the Restatement of Contracts § 290 (1932). In May, 1976, shortly after the Appeals Court decision, the American Law Institute (ALI) replaced section 290 with Restatement (Second) of Property, Landlord & Tenant § 7.1 (1961), which covers the subject and is applicable to all forms of tenancies, residential and commercial. See also Restatement (Second) of Contracts § 231 reporter's note (1979). That the ALI intended § 7.1 to apply to commercial as well as residential leases is demonstrated by all the illustrations included with the section referring to commercial leases. Section 7.1 provides: "*Nonperformance of Landlord's Promise — Remedies Available.* Except to the extent the parties to a lease validly agree otherwise, if the landlord fails to perform a valid promise contained in the lease to do, or to refrain from doing, something on the leased property or elsewhere, and as a consequence thereof, the tenant is deprived of *a significant inducement to the making of the lease,* and if the landlord does not perform his promise within a reasonable period of time after being requested to do so, the tenant may: . . . terminate the lease . . . and recover damages . . .; or . . . continue the lease and obtain appropriate equitable and legal relief, including: (a) the recovery of damages . . .; (b) an abatement of the rent . . .; (c) the use of

issue on the record before us, however, because, the independent covenant rule, even as traditionally stated, is not inflexible and, for summary judgment purposes, its application to the facts of this case would not be dispositive. The Massachusetts cases say no more than that covenants in leases are independent "in the absence of clear indications to the contrary." See, e.g., *Barry* v. *Frankini,* 287 Mass. 196, 201 (1934); *Sniger* v. *Fentin,* 4 Mass. App. Ct. 215, 217 (1976). The lease we are considering is part of an over-all transaction including a related agreement which provides that the promises contained in it were to be mutual and dependent. The related agreement set forth the principal terms which the parties agreed were to be included in the lease. Granite City's right to possession of the premises may derive, therefore, not only from the lease but also from the related agreement. The lease must be "read in the light of the circumstances of its execution." *Robert Indus., Inc.* v. *Spence,* 362 Mass. at 753-754. See also *Esmieu* v. *Hsieh,* 92 Wash. 2d 530, 533 (1979).

Several aspects of the related agreement were performed by Granite City, including the relinquishment of its forty percent ownership of the real estate, inferably in reliance on its right

---

the rent to perform the landlord's promise . . .; and (d) *the withholding of the rent . . . . .*" (emphasis supplied).

Apart from the change in the Restatement, the underpinnings of the traditional Massachusetts rule have been weakened by the Supreme Judicial Court's discussion of modern tenancies in the *Hemingway* case. Although the holding of *Hemingway* applied only to residential tenancies, there are implications for commercial tenancies as well in the court's discussion. The theories of property law on which the old rule was based were described by the court as outdated. Commercial tenants, like their residential counterparts, are often more interested in the use of the physical structure they are renting than in the use of the land. Although the majority of States apparently still cling to the traditional common law view of commercial leases, there are other states which treat covenants in commercial leases as being mutually dependent in the absence of some indication of a contrary intent. See, e.g., *Reste Realty Corp.* v. *Cooper,* 53 N.J. 444 (1969); *McDanel* v. *Mack Realty Co.,* 315 Pa. 174 (1934); *Teodori* v. *Werner,* 490 Pa. 58 (1980) (relying on the Restatement). Commentators have also adopted the modern approach. See, e.g., Friedman, Leases § 1.1 (1983); Note, Modernizing Commercial Lease Law: The Case for an Implied Warranty of Fitness, 19 Suffolk U.L. Rev. 929, 948-955 (1985).

under the agreement to continue to occupy the premises for its business purposes and to have the benefit of the additional space to be constructed. McNally states that Kelly's promise to do the construction work was crucial to his entering into the business transaction. Whatever the ordinary rule, we conclude here that the judge erred in granting summary judgment, as a material factual issue exists whether there are "clear indications" that the parties intended that the covenant to pay rent be dependent upon the promises contained in the exchange agreement to construct the additional space.

4. *It is in the interest of justice that the cases be consolidated.* Ordinarily we would not interfere with a judge's exercise of discretion in deciding to deny a motion to consolidate. See Smith & Zobel, Rules Practice § 42.2 (1977). Compare *Bradford* v. *Boston & Me. R.R.,* 225 Mass. 129, 132 (1916). Based upon the judge's conception of the covenant to pay rent as legally independent of any promise by the landlord, his decision to let the summary process action proceed separately to a speedy conclusion was entirely appropriate. On our view of the triable issues, however, the two cases are so intertwined that they should be consolidated for trial. Holmes Realty will not suffer serious prejudice by any delay resulting from the consolidation, as the rent is current and further litigation of the issues by Granite City rests upon its continued payment of the rent due. No purpose would be served by requiring that Granite City raise the issue of the failure to comply with the exchange agreement by a defensive pleading in the summary process case and holding the contract action in abeyance.

Accordingly, the judgment is vacated, the order denying the motion to consolidate is reversed, and the cases are to stand for further proceedings, consistent with this opinion, in the Superior Court.

*So ordered.*