Wright, J.
This is a summary process action to recover possession of commercial premises and unpaid rent. After trial, judgment was entered for plaintiff Robert R Marrotto, Trustee of the Bomar Trust (the “Landlord”).
Defendants Daniel A. and Jennifer L. Naumann (“the Tenants”) filed this Dist./ Mun. Cts. R. A. D. A., Rule 8C appeal on a charge of error in the court’s allowance of the Landlord’s motion to dismiss their counterclaims, and motion in limine to strike and to exclude evidence relevant to those affirmative defenses which were identical to the counterclaims. Both the counterclaims and affirmative defenses in question alleged that the parties’ transaction in its entirety consisted not just of the commercial lease of the premises, but also of an Option to Purchase (the “Option”) which accorded the Tenants the right to purchase the property, and that the Landlord’s breach of the Option somehow constituted a breach of the lease which excused or offset the Tenants’ prior default and entitled them to judgment in their favor.
The record indicates that on January 24,1995, the parties executed a lengthy, detailed Lease Agreement (the “Lease”) for commercial premises at 46 Montvale Avenue, Stoneham for a term of months from January 24,1995 to October 1,1996. The Tenants were obligated, inter alia, to pay rent in the amount of the principal and interest owed by the Landlord on a first mortgage to Eastern Bank ($1,923.60 per month), and all taxes, utilities, insurance and other operating costs. With respect to the Tenants’ insurance obligation, the Lease provided: “This Lease shall immediately terminate if, at any time during the term of this Lease, LESSEE is unable to maintain the insurance policies required herein.” In the event of the Tenants’ non-payment of rent, taxes and other required charges, the Lease granted the Landlord the “immediate right” of reentry and removal of all persons and property from the premises, and the right to terminate the Lease.
Uncontradicted evidence at trial established that the Tenants had defaulted in substantially all of their Lease obligations. Rent payments, in the form of mortgage principal and interest, were several months in arrears. The Tenants paid only half of the 1996 property insurance premiums, and owed a total of $10,619.21 in unpaid taxes and water and sewer charges assessed by the Town of Stoneham.
By written notice to the Tenants dated September 28,1996, the Landlord terminated the Lease for the Tenants’ breach thereof in failing to pay rent, taxes and *36 insurance for June, July and August, 1996, and ordered them to vacate the premises. The termination notice was served on September 30,1996. The Tenants did not, however, vacate the premises until late December, 1996, after the Landlord’s commencement of this summary process action on November 25,1996. The Tenants failed to pay any use and occupancy charges for the three month period from October through December. At the time of trial, they owed in excess of $17,000.00 for unpaid rent, use and occupancy and other charges.
By way of affirmative defense and counterclaim, the Tenants asserted that the Landlord was liable for breach of contract, misrepresentation, conversion and G.L.c. 93A unfair and deceptive practices in allegedly violating the parties’ Option to Purchase. The Option, executed on the same date as the Lease, permitted the Tenants to purchase the property upon written notification to the Landlord no later than midnight of October 1, 1996, “together with a letter of commitment from a financial institution or other proof of funds available to close.” The record on appeal includes a “Notice of Exercise of Option to Purchase” signed by the Tenants and dated September 30, 1996. Although the Notice refers to an “enclosed commitment from a financial institution,” no such document is attached to the Notice or appears elsewhere in the record. There is no indication as to when, or if, the Notice was delivered to the Landlord. The Notice also demanded that the Landlord release his security interest in the Tenants’ commercial accounts receivable to insure that the Tenants would have the requisite funding for the purchase of the property. As noted, the Landlord commenced this summary process action in November, 1996. The property was sold to a third party in March, 1997.
The Option itself makes only one reference to a lease between the parties in a sentence which grants the Tenants a credit toward the Option purchase price for the amount of mortgage principal and interest paid by the Tenants as rent. Similarly, of the Lease’s twenty-eight clauses, only one clause dealing with alterations of the premises and fixtures makes any reference to the Option.[3]
The Landlord’s motion to dismiss the Tenants’ counterclaims was allowed on March 20, 1997. On the day of trial, September 10, 1997, the court allowed the Landlord's motion in limine to strike the Tenants’ affirmative defenses relating to the counterclaims, and to exclude any evidence relevant to the same. On September 12, 1997, the court entered judgment for the Landlord for possession and for damages in the amount of $20,398.65, plus $5,000.00 in attorney’s fees.
On September 24, 1997, the Tenants commenced suit in the Superior Court Department to recover damages for the Landlord’s alleged breach of the Option. The Tenants concede that their claims in the Superior Court case, which is still pending, are identical to their counterclaims which were dismissed in this action.
1. It is established that summary process is a purely statutory procedure, and that all claims and counterclaims in such an action may be maintained only as specifically provided for in the summary process statutes. Nalbandian v. Patrizzi, 369 Mass. 477, 480 (1976). A tenant’s right to file a counterclaim in a summary process action was created, and is limited, by G.L.c. 239, §8A See Mulvanity v. Pelletier, 40 Mass. App. Ct. 106, 109 (1996); Shea v. Neponset River Marine & Sportsfishing, Inc., 14 Mass. App. Ct. 121, 127 & n.7 (1982).
Section 8A of G.L.c. 239 states, in relevant part:
*37 In any action under this chapter to recover possession of any premises rented or leased for dwelling purposes... the tenant or occupant shall be entitled to raise, by defense or counterclaim, any claim against the plaintiff relating to or arising out of such property, rental, tenancy or occupancy for breach of warranty, for a breach of any material provision of the rental agreement or for a violation of any other law (emphasis supplied).
By its express terms, §8A permits summary process counterclaims in only those actions where possession of residential premises is sought. See Commentary to Rule 5, Uniform Summary Process Rules. See also M.C. PERLIN & J.M. CONNORS, HANDBOOK OF CIVIL PROCEDURE IN THE MASS. DISTRICT COURT, §14.19 (1980 Ed.). It is undisputed that the subject premises in the instant case were strictly commercial in nature. There was thus no abuse of discretion in the trial court’s dismissal of the Tenants’ counterclaims herein.[4]
2. Even if the premises had been residential, it is equally clear that the Tenants’ counterclaim and related affirmative defenses alleging that the Landlord breached the Option agreement did not amount to a claim “for a breach of any material provision of the rental agreement” as required by G.L.C. 239, §8A[5]
The Tenants argue unpersuasively that the Lease must be read together with the Option as a single contract between the parties. “The question of integration is one of fact reserved for the trial judge, whose resolution of that issue will not be reversed unless clearly erroneous.” Starr v. Fordham, 420 Mass. 178, 188 n.8 (1995), quoting from Cambridgeport Sav. Bank v. Boersner, 413 Mass. 432, 436-437 n.7 (1992). The relevant factors in determining whether separate agreements must be construed and treated as a single integrated contract are "simultaneity of execution, identity of subject matter and parties, cross-referencing and interdependency of provisions.” Gilmore v. Century Bank & Trust Co., 20 Mass. App. Ct. 49, 56 (1985). While the Lease and Option were signed on the same date and involved the same parties and property, the parties’ respective rights and obligations under the Lease were in no way contingent upon, or governed by, provisions of the Option. There was also no significant or material cross-referencing of provisions. Stated alternatively, it was unnecessary to read the Lease in conjunction with the Option for either agreement to make sense as a contract. Id. at 56. The Lease appeared on its face to be a single, separate, detailed and integrated agreement for the short-term rental of commercial premises, and contained all that was necessary to constitute an enforceable lease. See, generally, Frank Constr. Corp. v. Republic Pow *38 dered Metals, Inc., 11 Mass. App. Ct. 972 (1981); Bendetson v. Coolidge, 7 Mass. App. Ct. 798, 802-803 (1979). Tbere was no ambiguity or uncertainty in any of its provisions or in their application which required resort to the Option or to any other outside evidence. Compare Kobayashi v. Orion Ventures, Inc., 42 Mass. App. Ct. 492, 496 (1997). Most significantly, there was nothing in either agreement to suggest that the Tenants’ Lease covenants to pay rent, insurance, taxes or other charges and the Landlord’s unequivocal rights upon the Tenants’ default were in any way dependent upon, or affected by, the existence or exercise of the Option. See Fred S. James & Co. v. Hoffman, 24 Mass. App. Ct. 160, 164-165 (1987). Compare Holmes Realty Trust v. Granite City Storage Co., 25 Mass. App. Ct. 272, 279 (1988).
Thus the Tenants’ Lease obligations to pay rent and other charges during the term of the Lease for the commercial premises they in fact occupied were independent of any rights they enjoyed upon their purported exercise of the Option to Purchase at the expiration of the Lease. Conversely, the Landlord’s alleged breach of the Option at the end of the lease term did not retroactively excuse the Tenants’ prior default under the Lease, or amount to a breach of that separate contract. There was no error in the court’s allowance of the Landlord’s motion in limine to strike the affirmative defenses pertaining to the Option to Purchase.
3. Nor was there any reversible error in the court’s exclusion at trial of evidence relative to the Option to Purchase. Generally, where there is a valid question of integration as to whether one or more agreements constitute a final and complete contract between the parties, evidence of negotiations and the circumstances of the contract’s execution is admitted to show the parties’ intent and the existence and terms of their contractual undertaking. Antonellis v. Northgate Constr. Corp., 362 Mass. 847, 849 (1973); Charles River Mortg. Co. v. Baptist Home of Mass., Inc., 36 Mass. App. Ct. 277, 280 (1994). In this case, however, the Tenants submitted a detailed explanation and account, in twenty-eight full paragraphs in their first counterclaim, of the history of the commercial property in question, the relationship and agreements of the parties, and the purported nexus between the Lease and the Option. There is no information in the Tenants’ offer of proof as to the excluded evidence contained in their brief which was not set forth in their counterclaim and subsequent opposition to the Landlord’s motion to strike. The Tenants are thus unable to satisfy their burden on this appeal of proving that the exclusion of the evidence in question was prejudicial because the trial judge might have reached a different result on the issues of possession and unpaid rent had the evidence been before her. DeJesus v. Yogel, 404 Mass. 44, 48-49 (1989); Cohen v. Liberty Mutual Ins. Co., 41 Mass. App. Ct. 748, 752 (1996). Moreover, the admission of evidence relevant to defenses and counterclaims to which the Tenants were not entitled under G.L.C. 239, §8A would have unduly protracted and needlessly complicated the trial of this matter in derogation of the operative rule requiring the “just, speedy and inexpensive determination of every summary process action.” Uniform Summary Process Rule 1. See also Hodge v. Klug, 33 Mass. App. Ct. 746, 747 (1992); Holmes Realty Trust v. Granite City Storage Co., 25 Mass. App. Ct. 272, 279 (1988).
Appeal dismissed.
So ordered.

 Clause 10 provides, in relevant part: “Any alteration, addition or improvement made by the LESSEE... and any fixtures installed as part thereof shall, at the LESSOR’S option, become the property of the LESSOR upon the expiration or other sooner termination of this Lease, unless the LESSEE exercises his Option to Purchase, or both parties agree to sell. These alternative choices are described in a separate instrument executed between the parties.”

 Abuse of discretion is the appropriate standard for appellate review of the dismissal or severance of a summary process counterclaim. The Commentary to Uniform Summary Process Rule 5 states: “Because counterclaims are not compulsory, the court retains discretion to sever a counterclaim which cannot appropriately be heard as part of the summary process action.”
The permissive nature of summary process counterclaims, see University of Lowell Research Foundation v. Classic Elite Yarns, Inc., 1998 Mass. App. Div. 200, 202-203, is the short answer to the Tenants’ erroneous contention that, despite the unambiguous language of §8A, the Legislature could not have intended to preclude all counterclaims by commercial tenants. Rule 5 states: “Counterclaims shall not be considered compulsory; that is, they shall not be considered waived for the purpose of a separate civil action or actions if not asserted in a summary process action.” Thus a commercial tenant remains free to pursue counterclaims in a separate suit, as the Tenants in this case have in fact done by filing their Superior Court action.

 There is no assertion in this case of a §8A “breach of warranty” or “violation of any other law.”