**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

WRH MORTGAGE, INCORPORATED,
Plaintiff-Appellant,

and

FEDERAL DEPOSIT INSURANCE
CORPORATION, as statutory successor
in interest to the Resolution Trust
Corporation as Receiver for
Investors Federal Savings Bank,
Plaintiff,

v.

S.A.S. ASSOCIATES, a Virginia

General Partnership; S.A.S.
INVESTORS ASSOCIATES, a Virginia
General Partnership; STEVEN B.
SANDLER, individually and as
General Partner for S.A.S.
Associates, and as General Partner
for S.A.S. Investors Associates;
ARTHUR B. SANDLER, individually
and as General Partner for S.A.S.
Associates, and as General Partner
for S.A.S. Investors Associates,
Defendants-Appellees.

No. 99-1716

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
William T. Prince, Magistrate Judge.
(CA-97-1173-2)

Argued: April 6, 2000

Decided: June 2, 2000

Before NIEMEYER, Circuit Judge, Roger J. MINER, Senior Circuit Judge of the United States Court of Appeals for the Second Circuit, sitting by designation, and Joseph R. GOODWIN, United States District Judge for the Southern District of West Virginia, sitting by designation.

_____

Affirmed by published opinion. Senior Judge Miner wrote the opinion, in which Judge Niemeyer and Judge Goodwin joined.

_____

**COUNSEL**

**ARGUED:** Thomas Dale Bridenbaugh, LEFTWICH & DOUGLAS, P.L.L.C., Washington, D.C., for Appellant. John Britton Russell, Jr., BECKER, RUSSELL & BECKER, P.L.C., Richmond, Virginia, for Appellees. **ON BRIEF:** Frederick A. Douglas, David B. Mintz, LEFTWICH & DOUGLAS, P.L.L.C., Washington, D.C., for Appellant.

_____

**OPINION**

MINER, Senior Circuit Judge:

Plaintiff-appellant WRH Mortgage, Inc. ("WRH") appeals from a judgment entered in the United States District Court for the Eastern District of Virginia (William T. Prince, M.J.) in favor of defendants-appellees S.A.S. Associates and S.A.S. Investors Associates, Virginia general partnerships, and Steven B. Sandler and Arthur B. Sandler, individually and as general partners in both partnerships (collectively "SAS"). The action was brought on a contractual claim to recover the balance due on a loan made by Investors Federal Savings Bank ("Investors Bank"), WRH's predecessor in interest, to SAS. Alternatively, recovery was sought on claims sounding in restitution or quasi-contract. The case was tried in the district court on stipulated facts and exhibits.

2

I.

On October 3, 1985, Investors Bank entered into a contract with SAS entitled "Construction, Loan and Lease Agreement" (the "Agreement") whereby SAS agreed to construct and lease to Investors Bank a branch bank building on a parcel of land in Virginia Beach, Virginia. The lease term provided was twenty-five years, and Investors Bank agreed to finance and supervise the construction of the building. The financing included $250,0000 for the land and $30,000 in costs incurred by SAS prior to the date of the Agreement. SAS received an additional $310,423.19 for actual construction costs in accordance with the terms of the Agreement, which also provided SAS with the option to take a permanent loan from Investors payable over twenty-five years.

On February 5, 1987, SAS opted to take a permanent loan in the amount of $622,000 at an annual interest rate of 10 percent. This amount was advanced under the following terms of the Agreement:

> The Loan amount shall be evidenced by a deed of trust note secured by a first deed of trust on the aforesaid real property which note shall be non-negotiable and shall expressly provide therein that payment thereunder shall be subject to and conditioned upon full and faithful performance by Lessee of the terms and conditions of the hereinbelow set forth Lease Agreement. . . .

Accordingly, a Deed of Trust Note ("Note") evidencing the permanent loan debt was executed by SAS, with the Note specifically referring to the Agreement as follows:

> This is an non-negotiable promissory note payable subject to the Maker's right of offset, pursuant to the terms of that certain Construction, Loan and Lease Agreement dated October 3, 1985, by and between the parties hereto. Pursuant thereto, Maker may offset any amount due and owing, but unpaid, by Investors [Bank] under such Construction, Loan and Lease Agreement against any payment or other amount owing hereunder, whether principal, interest, or otherwise, and same shall not constitute a default hereunder.

3

As required, SAS executed a separate Deed of Trust and Security Agreement to secure the loan. The loan debt was scheduled for repayment in monthly installments of $5,652.18 over a period of twenty-five years. Since the lease portion of the underlying Agreement also provided for a term of twenty-five years, Investors Bank paid SAS monthly only the difference between its monthly lease payments and the slightly smaller loan payments due it from SAS. Investors Bank made the required payments until February 1, 1992. However, on December 13, 1991, the Office of Thrift Supervision had placed Investors Bank in receivership and appointed the Resolution Trust Corporation ("RTC") as receiver and conservator. RTC thereby acquired all rights and obligations of Investors Bank, including those arising from the Agreement and the instruments executed pursuant to the Agreement.

On March 1, 1992, the RTC exercised its statutory authority to repudiate the lease between Investors Bank and SAS, finding the lease "burdensome." 12 U.S.C. § 1821(e). Within a short time thereafter, SAS ceased making the loan payments, contending that its obligations to pay the loan were discharged by RTC's repudiation of the lease. It is that contention that lies at the heart of the dispute between the parties to the action giving rise to this appeal.

The action was commenced on December 18, 1997 by the Federal Deposit Insurance Corporation ("FDIC"), which replaced the RTC as receiver of Investors Bank by operation of law on December 31, 1995. See 12 U.S.C. § 1441a(m)(1). On July 2, 1998, FDIC sold the Note to WRH, which was added as a plaintiff in lieu of granting the FDIC's motion for substitution of parties. It appears that the appeal is prosecuted by WRH alone.

The prayer for relief in the amended complaint in the action includes the following: a declaratory judgment that the repudiation of the lease by RTC did not release SAS from its obligations under the Note and the Deed of Trust and Security Agreement; judgment against SAS for all amounts due on the Note or foreclosure; in the event of the release of the loan obligations of SAS, recovery of $280,000 plus the value of improvements to the land under an unjust enrichment theory; and costs and attorney's fees.

4

Following the denial of motions for summary judgment made by each side, the case came on for a non-jury trial before the Magistrate Judge on March 22, 1999. No witnesses were called, and the trial was had on stipulated facts and exhibits. The Magistrate Judge issued his Opinion and Order directing judgment in favor of the defendants on April 23, 1999. See FDIC & WRH Mortgage, Inc. v. S.A.S. Assocs., 44 F. Supp. 2d 781 (E.D. Va. 1999). The district court concluded that the repudiation of the lease by the predecessors of WRH discharged the obligation of SAS to repay the loan arising from the original Agreement between Investors Bank and SAS.

The court found that the discharge of the obligation did not constitute a penalty and that there was no breach of contract on the part of SAS. Since there was in existence a contract defining the relationship of WRH and SAS, the court determined that there could be no recovery for claims sounding in restitution or quasi-contract. Moreover, the court determined that WRH failed to establish either a reasonable expectation of payment on the Note or unjust enrichment of SAS by its retention of the loan proceeds. The court reasoned as follows: "As the Agreement and the Note clearly indicated, [WRH] could only receive payment on the Note evidencing the loan so long as they continued to make payments on the lease." Id. at 788. We affirm the judgment of the district court.

II.

The Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), Pub. L. 101-73, 103 Stat. 183, 187, permits the receiver of a failed financial institution to repudiate any lease or contract that the receiver finds to be burdensome. See 12 U.S.C. § 1821(e)(1). In pertinent part, FIRREA provides as follows:

> In addition to any other rights a conservator or receiver may have, the conservator or receiver for any insured depository institution may disaffirm or repudiate any contract or lease --
>
> (A) to which such institution is a party;

5

> (B) the performance of which the conservator or receiver, in the conservator's or receiver's discretion, determines to be burdensome; and
>
> (C) the disaffirmance or repudiation of which the conservator or receiver determines, in the conservator's or receiver's discretion, will promote the orderly administration of the institution's affairs.

Id. Repudiation pursuant to the statute is treated as a breach of contract giving rise to an ordinary contract claim for damages. See Howell v. FDIC, 986 F.2d 569, 571 (1st Cir. 1993). However, the following provisions of FIRREA expressly limit the damages that may be assessed by courts for the FDIC's repudiation of a contract:

> Except as otherwise provided in subparagraph (C) and paragraphs (4), (5), and (6), the liability of the conservator or receiver for the disaffirmance or repudiation of any contract pursuant to paragraph (1) shall be --
>
> (i) limited to actual direct compensatory damages; and
>
> (ii) determined as of --
>
> (I) the date of the appointment of the conservator or receiver; or
>
> (II) in the case of any contract or agreement referred to in paragraph (8), the date of the disaffirmance or repudiation of such contract or agreement.

12 U.S.C. § 1821(e)(3)(A). Section 1821(e)(4) of FIRREA specifically deals with the situation where the receiver repudiates a lease. It provides

> (A) In general

6

If the conservator or receiver disaffirms or repudiates a lease under which the insured depository institution was the lessee, the conservator or receiver shall not be liable for any damages (other than damages determined pursuant to subparagraph (B)) for the disaffirmance or repudiation of such lease.

(B) Payments of rent

Notwithstanding subparagraph (A), the lessor under a lease to which such subparagraph applies shall --

(i) be entitled to the contractual rent accruing before the later of the date --

(I) the notice of disaffirmance or repudiation is mailed; or

(II) the disaffirmance or repudiation becomes effective, unless the lessor is in default or breach of the terms of the lease;

(ii) have no claim for damages under any acceleration clause or other penalty provision in the lease; and

(iii) have a claim for any unpaid rent, subject to all appropriate offsets and defenses, due as of the date of the appointment which shall be paid in accordance with this subsection and subsection (i) of this section.

Id.

WRH argues that the obligation of SAS to repay the permanent loan cannot be discharged because the discharge would impose damages for RTC's repudiation of the lease, in contravention of the provisions of FIRREA. Beyond that, WRH invokes FIRREA in support of its contention that its loss of the balance due on the loan would consti-

7

tute an unlawful forfeiture or penalty for the abrogation of the lease. Alternatively, WRH argues for the recovery of $416,000, the value of the land and improvements, "in restitution under a theory of quasi-contract to prevent the unjust enrichment of SAS" if "this Court find[s] that there is no longer a contract between the parties by operation of law." We reject all the arguments of WRH for the reasons that follow.

III.

It is the generally accepted rule that

> [i]n the case of a bilateral contract for an agreed exchange of performances, a repudiation of his duty by one of the parties terminates the duty of the other. It gives to the latter the legal privilege of refusing to render the return performance; if sued for such refusal, the plaintiff's repudiation is a good defense.

4 Arthur Linton Corbin, Corbin on Contracts § 975 (1951 & 1999 Supp. by Lawrence A. Cunningham & Arthur J. Jacobson). According to this common law rule, the termination of the lease by the RTC as successor to Investors Bank would discharge any duty owed by SAS under the Construction, Loan and Lease Agreement. The parties have stipulated that the Agreement is an integrated, single contract. This being so, a unilateral breach of any part of the contract constitutes a breach of the indivisible whole.

The common law authorizes an action for money damages (or, in an appropriate case, for specific performance) on a contract that is breached by repudiation. 4 id. § 948. However, FIRREA strictly limits the remedies available to those aggrieved when conservators and receivers choose to repudiate contracts entered into by financial institutions. In the case of repudiation of a lease, the lessor is not entitled to contractual rent accruing after the notice of repudiation is mailed and is barred from recovering damages under any acceleration clause or other penalty provisions of the lease. See 12 U.S.C. § 1821(e)(4)(B)(i), (ii). Nowhere does the statute modify the common law rule to require the lessor to perform under the lease or under any repudiated contract of which the lease is an integral part. We can

8

identify no basis for relieving the RTC and its assignees from the consequences of the repudiation breach here. In arriving at our conclusion that SAS is privileged to refuse to render the return performance under the integrated Agreement, we find support in the reasoning not only of the district court in this case but of other district courts that have considered similar or analogous cases.

A very similar case is Hackel v. FDIC, 858 F. Supp. 289 (D. Mass. 1994). There, a bank entered into an agreement with the plaintiff for a sale and lease-back of property, with the bank financing a portion of the sale price and taking back a note guaranteed by the plaintiff. The rent to be paid by the bank was intended to cover the note payments, real estate taxes, operating expenses and a return on the plaintiff's cash investment. At closing, the parties simultaneously executed a purchase and sale agreement, note, guaranty and lease. Ultimately, the bank was declared insolvent and the FDIC, appointed as receiver, disaffirmed the lease. The plaintiff prevailed on his claim that he was not obligated to perform under the note and guaranty. Key to the court's determination was the finding that the agreement between the parties constituted a single, integrated contract. Flowing from that determination was the conclusion that the repudiation allowed by statute, while valid and not giving rise to any claim for damages, relieved plaintiff of his obligations under the disaffirmed agreement. In the words of the court, "[a]s a result [of the repudiation], the Note and Limited Guaranty, other integral parts of the same agreement, became null and void and, thus, unenforceable." Id . at 292 (citing Texas Commerce Bank Nat'l Assoc. v. Capital Bancshares, Inc. , 907 F.2d 1571, 1577 (5th Cir. 1990) (FDIC's repudiation of agreement voided other party's obligations on a note)).

In Capital Guidance Assocs. v. NCNB Tex. Nat'l Bank, No. 90-331, 1991 WL 210740 (S.D. Tex. Oct. 7, 1991), the plaintiff's predecessor in interest leased from a bank that was NCNB's predecessor in interest a certain parcel of land ("Project Lease") and leased to the same bank a portion of the office building it constructed on the land ("Office Lease"). The leases were simultaneously executed and were exchanged on the same day. NCNB disaffirmed its obligations under the Office Lease as authorized by the FDIC but sought to enforce the

9

rent obligations under the Project Lease. The court formulated the issue in the following manner:

> Under the plain language of the . . . statute, FDIC-Receiver is unfettered in its authority to repudiate "any contract or lease." However, Capital Guidance's allegation is that FDIC-Receiver is not "legally entitled to reject the burdens of a bilateral agreement and to collect the benefits provided under that agreement." Thus the question arises whether the leases constitute an integrated single contract or whether they are separate agreements.

Id. at *9. The court, applying state contract law, answered its question as follows: "Both of these mutual and reciprocal leases were simultaneously executed and exchanged on a single day. Both leases contain numerous references to each other, and expressly demonstrate that all contracts are critical components of a single transaction. Therefore the leases are an integrated single contract." Id . at *10 (footnote omitted). The court next confronted the question "whether the FDIC-Receiver has the authority to repudiate only a lease or contract in its entirety or just a portion of a lease or contract." Id . Addressing the motions to dismiss and for summary judgment filed by the defendants in the action brought by plaintiff to challenge the partial disaffirmance among other things, the district court wrote:

> Congress intended that only contracts or leases which were "separately set forth," determined "to be burdensome" and where "avoidance would assist the orderly administration" of the failed bank's estate be disaffirmed or repudiated. The leases subject to this suit were negotiated and reduced to writing as an integrated single contract, thus a question exists if FDIC-Receiver accepted the Project Lease whether it was required to accept the Office Lease as well.

Id.

Our conclusion that RTC is not relieved from the consequences of its breach in the case at bar would be much different if we had determined that the Agreement in this case did not constitute a single integrated contract. Cf. Cardente v. Fleet Bank of Maine, Inc., 796 F. Supp. 603, 610-11 (D. Me. 1992); R.T.C. Mortgage Trust 1994-S3 v. Guadalupe Plaza, 918 F. Supp. 1441, 1445-47 (D.N.M. 1996);

10

Jenkins-Petre Partnership One v. R.T.C., No. Civ. 91-A-637, 1991 U.S. Dist. LEXIS 20240, at *19 (D. Colo. 1991). In the absence of such a determination, and in the absence of a specific statutory provision dictating otherwise, we see no reason to depart from the common law contractual rule excusing performance by a party whose contract has been repudiated by the other party to the same integrated contract.

We reject the contention of WRH that the discharge of the obligations of SAS under the Agreement by reason of the RTC's repudiation of the lease somehow constituted a penalty or forfeiture. While it is true that contract provisions calling for breach of contract damages grossly in excess of actual damages generally are unenforceable as penalties or forfeitures, see Brooks v. Bankson, 445 S.E.2d 473, 479 (Va. 1994), such a rule is inapplicable here. The Agreement does not contain a penalty provision, and there certainly is no separate penalty provision in the repudiated lease. If there were, it would of course be subject to the FIRREA proscription against the enforcement of "any acceleration clause or other penalty provisions in the lease." 12 U.S.C. § 1821(e)(4)(B)(ii). That WRH must suffer the consequences of the RTC's breach of contract surely does not give rise to a penalty or forfeiture.

Finally, WRH's arguments that it is entitled to recover on theories of restitution or quasi-contract if there is no longer a contract between the parties also must fail. Where a contract governs the relationship of the parties, the equitable remedy of restitution grounded in quasi-contract or unjust enrichment does not lie. See Acorn Structures, Inc. v. Swantz, 846 F.2d 923, 926 (4th Cir. 1988). The Agreement clearly governs the relationship of the parties to it despite the breach occasioned by RTC's repudiation of the lease portion of the Agreement. Therefore it cannot be said that there is "no longer" a contract between the parties. A valid contract does exist. We deal here with the consequences of its breach. In any event, recovery in quasi-contract is barred in this case because there is no evidentiary showing that any benefit accruing to SAS as the result of the breach by RTC unjustly enriched SAS. See 66 Am. Jur. 2d Restitution and Implied Contracts §§ 3,4.

AFFIRMED

11